**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 14 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

OTABEK KUSHAKOV,

　　　　　Petitioner,

v.

JOHN ASHCROFT,

　　　　　Respondent.

No.  02-9589
(BIA No. A78-584-955)
(Petition for Review)

---

**ORDER AND JUDGMENT**  *

---

Before  **EBEL** , **BALDOCK** , and  **LUCERO** , Circuit Judges.

---

Petitioner Otabek Kushakov, a citizen of Uzbekistan who is proceeding

pro se, petitions for review of an order of the Bureau of Immigration Appeals

(BIA) summarily affirming the decision of the Immigration Judge (IJ) denying his

applications for: (1) asylum; (2) withholding of removal under 8 U.S.C.

§ 1231(b)(3); and (3) withholding of removal under the Convention Against

---

*   The case is unanimously ordered submitted without oral argument pursuant to
Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).  This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Torture, see 8 C.F.R. § 208.16(c)(2). We deny the petition for review and affirm the IJ's decision denying the applications for asylum and withholding of removal[1].

**I**

Kushakov is twenty-five years old, and he left Uzbekistan in March 2000. He claims he is a devout Muslim, and denies any affiliation with anti-government or terrorist groups. Kushakov also claims that he has been persecuted by the government of Uzbekistan in the past and fears future persecution because: (1) he practiced Islam outside of state regulation; and (2) he was suspected of being a Muslim extremist and of being engaged in anti-government activities.

To support his claim that he suffered past persecution, Kushakov alleges that he was detained by government authorities for two weeks in August 1999 and interrogated regarding his religious and political beliefs. Prior to his detention in February 1999, five suspected terrorist bombs exploded in Tashkent (the capital of Uzbekistan and the city where Kushakov resided), and Kushakov claims that he

---

[1] Because we have jurisdiction to directly review the IJ's decision denying Kushakov's applications for asylum and for withholding of removal, we need not address Kushakov's claim that the BIA failed to comply with the streamlining regulations in 8 C.F.R. § 3.1 (codified at 8 C.F.R. § 1003.1) when it assigned Kushakov's appeal to a single member of the BIA for a summary affirmance without an opinion. See Batalova v. Ashcroft, 355 F.3d 1246, 1253 n.8 (10th Cir. 2004) (noting, in case in which the IJ denied applications for asylum and for withholding of removal, that "it [made] little difference whether the BIA member properly or improperly determined to utilize [the streamlining regulations] . . . because we directly review the IJ's decision, which the BIA member adopted").

was detained as part of the government's crackdown on suspected Muslim extremists following the bombings. Although he was not tortured during his detention, Kushakov asserts that he was kicked and punched by government agents at the time he was initially detained. He also claims that in order to obtain his release he had to sign a statement renouncing certain Islamic groups and agreeing not to leave Tashkent.

According to Kushakov, his younger brother has been persecuted by the government of Uzbekistan due to his religious beliefs and because he is a suspected Muslim extremist. Specifically, Kushakov states that the government wrongfully convicted his brother of sedition in July 1999, and that his brother is currently serving a twenty-year prison sentence for that offense. During his brother's trial, Kushakov alleges that the government put forth evidence against his father, and that his father was subsequently sentenced to prison for three and one-half years for helping a friend of his brother (who was apparently also a suspected Muslim extremist) flee the country.

In an oral decision dated March 6, 2001, the IJ found that Kushakov failed to establish refugee status based on his alleged past persecution or his alleged fear of future persecution, and therefore denied his application for asylum. In an order dated November 18, 2002, a single member of the BIA summarily affirmed the IJ's decision without an opinion pursuant to 8 C.F.R. § 3.1(e)(4) (codified at 8

C.F.R. § 1003.1(e)(4)). As a result of the BIA's summary affirmance, the IJ's decision became "the 'final agency determination'" for purposes of appellate review. Sviridov v. Ashcroft, 358 F.3d 722, 726–27 (10th Cir. 2004) (quoting 8 C.F.R. § 3.1(e)(4)(ii)).

## II

### A

Because Kushakov's application was denied on refugee status, our review is "limited, in breadth, to that threshold determination," Vatulev v. Ashcroft, 354 F.3d 1207, 1209 (10th Cir. 2003), and we review the IJ's resolution of Kushakov's refugee status under a "substantial evidence standard." Yuk v. Ashcroft, 355 F.3d 1222, 1233 (10th Cir. 2004). As a result,

> [t]he [IJ's] determination that [Kushakov is] not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. It can be reversed only if the evidence presented by [Kushakov] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed. We do not weigh the evidence or . . . evaluate the witnesses' credibility. The [IJ's] findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary.

Id. (quotations and citations omitted).

A request for asylum requires that the applicant first establish that he or she is a "refugee." See Krastev v. INS, 292 F.3d 1268, 1270 (10th Cir. 2002) (citation omitted). A "refugee" is any person outside the country of his or her

-4-

national origin "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).  To demonstrate refugee status, an applicant for asylum may prevail in any one of three ways:

> One way is by showing he or she has a well-founded fear of [future] persecution.  A second way to establish refugee status is to demonstrate that he or she has suffered past persecution, which gives rise to a presumption that he or she has a well-founded fear of future persecution unless the INS rebuts the presumption by a preponderance of the evidence.  The third way to establish status as a refugee is to establish past persecution so severe that it demonstrates compelling reasons for being unwilling to return.  This is known as "humanitarian" asylum.

Yuk, 355 F.3d at 1232–33 (quotations omitted).  Once an applicant establishes his or her refugee status, it is left to the discretion of the Attorney General to either grant or deny asylum.  Id. at 1233.

As set forth above, Kushakov claims that he is entitled to refugee status because he has suffered religious/political persecution in Uzbekistan in the past and has a well-founded fear of future persecution if he is forced to return to Uzbekistan.  However, with respect to his past persecution claim, Kushakov is not claiming that he is entitled to "humanitarian" asylum.  Instead, he is asserting past persecution for the sole purpose of raising a presumption that he has a well-

founded fear of future persecution. If he cannot establish that he suffered past persecution for purposes of gaining the benefit of the presumption, Kushakov may nonetheless prove a well-founded fear of persecution. To that end, he may demonstrate either: (1) that he would be "singled out personally for persecution" in Uzbekistan; or (2) that he has a "reasonable fear of persecution because of [his] membership in a group subject to 'a pattern or practice of persecution.'" Woldemeskel v. INS, 257 F.3d 1185, 1190 (10th Cir. 2001) (quoting 8 C.F.R. § 208.13(b)(2)(iii)(A)-(B)).

Although the IJ found that Kushakov "was a credible witness in his own behalf," (Admin. R. at 42), he nonetheless found that Kushakov did not suffer past persecution or have a well-founded fear of future persecution because: (1) in his testimony at the hearing, while he "referred to concern regarding potential affiliation with 'Muslim clerics,'" he failed to establish any "particular personal affiliation" with such clerics, (id. at 37); (2) after he was released from his two-week detention in August 1999, "he had no other problems with governmental authorities" during the seven-month period before he departed for the United States, (id. at 41); (3) he failed to submit any "corroborating evidence . . . with regard to the particular problems experienced by [him] or any other members of his immediate family," (id. at 42); (4) he "testified that admittedly the government of Uzbekistan at no time specifically interfered with his ability to practice his

-6-

Muslim beliefs," (id.); (5) "[t]hough the Department of State reports indicate that the Uzbeki government has investigated Muslims who are perceived to be involved in what the government describes as fanatical or potentially terroristic activities, . . . nevertheless, the State Department documents also establish that this type of interference does not occur with recognized mosques or religious institutions," (id. at 43); (6) "there has been no establishment or identification of [Kushakov] with any Muslim sect, either rightfully or wrongfully, that caused him problems in the past or would potentially cause him problems in the future," (id. at 44); (7) "apparently no affiliation, no suspicions were confirmed tying [Kushakov] to [the Khizbal-Takhir, an Islamic political movement, or any other suspected extremist group] as evidenced by his release [from detention] in August of 1999 without any further government investigation or interference in his activities," (id.); and (8) while Kushakov may suffer some form of punishment if he returns to Uzbekistan because of his failure to comply with his agreement not to leave Tashkent, any such punishment would not "be a form of 'persecution based upon race, religion, nationality, membership in a particular social group, and/or political opinion,'" ( id. at 45) (internal quotation marks omitted).

We agree with the IJ that there is insufficient evidence in the administrative record to establish that the government of Uzbekistan persecuted Kushakov in the

past.[2]  As a result, we also agree with the IJ that Kushakov is not entitled to a presumption that he has a well-founded fear of future persecution based on past persecution.  This does not end our inquiry, however, because Kushakov may establish that he has a well-founded fear of future persecution without the benefit of a presumption based on past persecution, again, either by showing: (1) that he would be singled out personally for persecution; or (2) that his membership in a group subject to a pattern or practice of persecution leads to a reasonable fear of future persecution.  See Woldemeskel, 257 F.3d at 1190.

As to individualized persecution, in Vatulev v. Ashcroft, 354 F.3d 1207, 1210-11 (10th Cir. 2003), this court recently discussed the showing that must be

---

[2]  "Although persecution is not explicitly defined, [this court has] observed that it requires the infliction of suffering or harm . . . in a way regarded as offensive and requires more than just restrictions or threats to life and liberty."  Woldemeskel, 257 F.3d at 1188 (quotations omitted).  We also agree with the Seventh Circuit that being detained for a short period of time generally does not rise to the level of persecution unless the detention is accompanied by significant physical mistreatment.  See Asani v. INS, 154 F.3d 719, 723-25 (7th Cir. 1998).  While Kushakov claims that he was kicked and punched by government agents during his detention in August 1999, he has acknowledged that this occurred only when he was "first" arrested, and that he "was not physically beaten while [he] was being held."  (Admin. R. at 267, 268.)  Kushakov has also acknowledged that he was not tortured or "harassed continuously" like most of the other prisoners.  (Id. at 95, 267.)  He attributes the better treatment he received to the fact that he spoke to the prison guards in Russian, has a Caucasian appearance, and possessed a passport that showed he had traveled abroad.  (Id. at 94-95, 268.)  In light of this evidence, the IJ's determination that Kushakov's two-week detention in August 1999 did not constitute past persecution is supported by substantial evidence in the record.

made in order for an asylum applicant to establish the requisite individualized risk of future persecution, and we cited with approval the Ninth Circuit's decision in Hoxha v. Ashcroft, 319 F.3d 1179 (9th Cir. 2003). We noted that "[t]he more egregious the showing of group persecution—the greater the risk to all members of the group—the less evidence of individualized persecution must be adduced." Vatulev, 354 F.3d at 1210-11 (quoting Hoxha, 319 F.3d at 1182-83). In Hoxha, the Ninth Circuit concluded that although an ethnic Albanian from the Kosovo region of Serbia failed to establish that he had been persecuted in the past by the dominant Serbian majority, 319 F.3d. at 1182, he nonetheless had established a well-founded fear of future persecution, id. at 1184. The court based its holding on three factors: (1) that the administrative record documented extensive persecution of ethnic Albanians in Kosovo, id. at 1183; (2) that petitioner "had been subjected to harassment, threats and mistreatment since early childhood," id. at 1181, which although not sufficient to compel a presumption of future persecution were nonetheless "indicative of his individualized risk of experiencing similar mistreatment if he returns to Kosovo," id. at 1184; and (3) prior to leaving Kosovo, the petitioner had "received, and ignored, a summons for an 'informative conversation' with Serbian authorities," id.

While the backdrop of ethnic cleansing and genocide makes Hoxha an extreme case, this case is analogous to Hoxha in certain respects. Most notably,

-9-

there are extremely condemning State Department reports in the administrative record documenting the government of Uzbekistan's widespread religious/political persecution of certain Muslim groups. In fact, the reports specifically document the governmental persecution and human rights violations that occurred following the bombings in Tashkent in February 1999, including the precise types of unlawful detentions and false convictions that Kushakov claims he and his brother were victims of in July and August 1999. ( <u>See</u> Admin. R. at 154-55.) Likewise, this case is similar to <u>Hoxha</u> in that Kushakov is claiming that he has an increased risk of future persecution if he is forced to return to Uzbekistan because the government can prosecute him for failing to abide by his agreement not to leave Tashkent.

Nonetheless, Kushakov has failed to carry his burden of demonstrating that the administrative record compels a finding that he has a sufficient individualized risk of future persecution. Specifically, he has not shown any legal error or evidentiary deficiency with respect to the IJ's finding that he has failed to establish any tangible affiliation with any of the Muslim clerics or suspected extremist groups that have been targeted for persecution by the government of Uzbekistan. In addition, while Kushakov claims he has a well-founded fear of future persecution because the government of Uzbekistan will perceive that he is a member of one of the Muslim groups that it has targeted as part of its

crackdown on Muslim extremists, the fact that he is not a member of any of the targeted groups distinguishes this case from Hoxha and leads us to conclude that the IJ's decision to deny refugee status to Kushakov is supported by substantial evidence.

As to whether Kushakov has a "reasonable fear of persecution because of [his] membership in a group subject to a pattern or practice of persecution," Woldemeskel, 257 F.3d at 1190 (quotation omitted), Kushakov alleged that he is a member of a group that has been subjected to persecution by the government of Uzbekistan. "A pattern or practice of persecution has been defined as 'something on the order of organized or systematic or pervasive persecution.'" Id. at 1191 (quotation omitted). Moreover, "[t]he group must consist 'of persons similarly situated to [Kushakov] on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Id. at 1190–91 (quoting 8 C.F.R. § 208.13(b)(2)(iii)(A)).

As noted above, we agree with the IJ that there is no evidence in the administrative record specifically tying Kushakov to any of the Muslim clerics or suspected extremist groups that have been targeted by the government of Uzbekistan. We also conclude that there is insufficient evidence in the administrative record to mandate a finding by the IJ that the government of Uzbekistan has engaged in a pattern or practice of persecution against all devout

Muslims who practice their religion outside of the state-sponsored religious institutions. As a result, there is no basis for granting Kushakov refugee status based on the alleged group persecution.

**B**

Turning to Kushakov's remaining arguments on appeal, to be entitled to withholding of removal under 8 U.S.C. § 1231(b)(3), "[t]he applicant must establish a clear probability of persecution . . ., which is a higher standard than is applicable to a request for asylum." Krastev, 292 F.3d at 1271. The IJ found that Kushakov failed to establish a clear probability of persecution if he is forced to return to Uzbekistan. (See Admin. R. at 46.) We conclude that the IJ's finding with respect to this higher standard of proof is supported by substantial evidence in the administrative record. We therefore affirm the denial of Kushakov's application for withholding of removal under § 1231(b)(3).

To be entitled to withholding of removal under the Convention Against Torture, an applicant must establish that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Batalova v. Ashcroft, 355 F.3d 1246, 1248 n.2 (10th Cir. 2004) (citing 8 C.F.R. § 208.16(c)(2)). The IJ found that Kushakov failed to establish the requisite likelihood of being tortured so as to merit relief under the Convention Against Torture. (See Admin. R. at 46.) Because the IJ's finding is supported by

substantial evidence in the administrative record, we affirm the denial of Kushakov's application for withholding under the Convention Against Torture.

## III

The petition for review is **DENIED**. The IJ's decision denying the applications for asylum and withholding of removal is **AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge