**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 23, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JORGE LUIS CORTEZ CABRERA,

    Petitioner,

v.

PAMELA J. BONDI, United States
Attorney General,*

    Respondent.

No. 25-9503
(Petition for Review)

_____

**ORDER AND JUDGMENT**\*\*
_____

Before **HARTZ**, **EID**, and **CARSON**, Circuit Judges.
_____

Jorge Luis Cortez-Cabrera (Petitioner) is a native and citizen of Mexico. He

petitions this court for review of a decision by the Board of Immigration Appeals

(BIA) dismissing his appeal of the denial by an immigration judge (IJ) of his

---

    \* On February 5, 2025, Pamela J. Bondi became Attorney General of the United
States. Consequently, she has been substituted for Merrick B. Garland as Respondent, per
Fed. R. App. P. 43(c)(2).

    \*\* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

application for withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3), and for relief under the Convention Against Torture (CAT). According to Petitioner, he will be persecuted on account of his membership in a particular social group (children of former Mexican police officers) if he is returned to his home country. Both the IJ and BIA concluded that Petitioner (1) did not establish a nexus between his alleged persecution and his membership in a protected social group, (2) did not establish past torture, and (3) did not establish that it is more likely than not that Petitioner would be tortured if returned to Mexico. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

## I.    BACKGROUND

In 2010 Petitioner was removed from the United States after the Department of Homeland Security (DHS) determined that he was an immigrant who did not possess valid entry documents in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I). Ten years later he illegally reentered the United States. In December 2023 DHS reinstated Petitioner's prior removal order and detained him. After conducting a reasonable-fear interview, it determined that Petitioner did *not* establish a reasonable fear of returning to Mexico. An IJ vacated this finding and placed Petitioner in withholding-only proceedings.

Petitioner applied for withholding of removal and CAT relief. At his merits hearing, he testified as follows: In 2020 three municipal police officers in Mexico arrested and detained him several times for carrying a marijuana pipe and once for carrying pepper spray. Each time, the officers demanded money for his release. When

2

Petitioner did not pay them, the officers would detain him for 24 hours and then release him. At one point, officers searched Petitioner's house for drugs, detained him, and took him to court before ultimately releasing him. Petitioner moved to a new town in Mexico; but he did not escape police interest. In early 2021 officers intercepted him while he was crossing a two-story bridge in the town. When they asked him for money, he did not respond. Instead, he tried to escape by jumping off the bridge into a river. He sustained injuries to his head, face, and back. Petitioner told the IJ that officers pulled him from the river, beat him, and searched his backpack for drugs. But he did not explain the basis for his allegation of a beating. And the allegation was undermined when he testified at the IJ hearing: "From the point where I fell in the river, they pulled me out, I have no memory." A.R. at 209.

Petitioner's father testified that he had served as a narcotics police officer in Mexico City from 1983 to 1984—four years before Petitioner was born. He said that after he saw his supervisor involved in the drug trade, his former coworkers threatened him and "killed one of [his] cousins," *Id.* at 365, so he retired. He was again threatened after moving to another state. These threats stopped in 2004.

The IJ denied Petitioner withholding of removal and CAT relief. As for withholding of removal, the IJ held, among other things, that Petitioner failed to establish a nexus between his proposed social group ("children of former Mexican police officers") and his alleged persecution. She explained:

> The police officers that harmed [Petitioner] did not mention his father. [Petitioner's] father testified that he was a police officer from 1983 to 1984, before [Petitioner] was born. Nonetheless, [Petitioner] believes that

3

the last time he was arrested, someone mentioned the town he was from. That reference alone isn't sufficient to establish that his membership in a particular social group of, children of former Mexican police officers, even if deemed cognizable, is one central reason for why he was harmed. As such, [Petitioner] failed to demonstrate past persecution on account of a protected ground.

A.R. at 140; *see id.* at 141 (similar for future persecution). Regarding CAT relief, the IJ held that Petitioner did not establish past torture or that he would be subject to torture by the Mexican government, or with the acquiescence of the government, if he returned to Mexico. The BIA affirmed.[1]

## II.    DISCUSSION

"Our scope of review directly correlates to the form of the BIA decision." *Singh v. Bondi*, No. 23-9598, 2025 WL 2046047, at *3 (10th Cir. July 22, 2025) (internal quotation marks omitted). "Where, as here, a single member of the BIA affirms an IJ decision, we review the BIA's opinion, but we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* (internal quotation marks omitted).

---

[1] We question whether Petitioner timely sought review in this court. Although his petition came "within thirty days of the BIA order denying deferral of removal," that order is *not* a "'final order of removal.'" *Riley v. Bondi*, 145 S. Ct. 2190, 2197 (2025). Instead, the 30-day window to file a petition for review, *see* 8 U.S.C. § 1252(b)(1), opened when DHS issued its reinstatement order in December 2023. "That order held that [Petitioner] was deportable and directed that he be removed from the United States." *Riley*, 145 S. Ct. at 2198. Nevertheless, the deadline for filing a petition for review is *not* jurisdictional. *See id.* at 2203. And because the government does not press timeliness, we proceed to the merits. *See id.* at 2203–04.

4

We review legal conclusions de novo and findings of fact for substantial evidence. *See Aguayo v. Garland*, 78 F.4th 1210, 1216 (10th Cir. 2023). "Under the substantial-evidence standard, our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Id.* (internal quotation marks omitted).

### A.     Withholding of Removal

Petitioner raises three challenges to the BIA's adverse nexus determinations. We are unpersuaded. First, he argues that the IJ and BIA applied the wrong legal standard when reviewing his withholding-of-removal claim. He contends that the IJ and BIA required him to show that his protected ground was the "one central reason" for his persecution. Pet'r Br. at 25 (internal quotation marks omitted). This standard, he says, applies to *asylum* cases—not *withholding-of-removal* cases. The latter, he contends, should be governed by a "less demanding 'mixed motive' nexus standard." *Id.* at 25–26. Under this relaxed standard, an applicant needs to show that a "protected ground was *a* reason for the persecution." *Id.* at 24 (emphasis added, internal quotation marks omitted).

But not every reason qualifies. The opinion of the BIA said that Petitioner's "evidence does not reflect that . . . [his] family ties to a former Mexican police officer, or any other protected ground, was or would be more than an incidental, tangential, or superficial reason for his past or future harm." A.R. at 4. Such a minor collateral reason does not satisfy the standard we recognize in this circuit. *See*

*Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010). The IJ and BIA did not apply an incorrect standard.

Second, Petitioner argues that the IJ and BIA "failed to engage and analyze [certain] substantial direct and circumstantial evidence in the record that demonstrated the requisite nexus." Pet'r Br. at 26. Not so. The IJ necessarily considered the testimony presented at the hearing and it declared that it had considered *all* record exhibits before it—"regardless of whether [they were] specifically mentioned in this decision." A.R. at 133. We have no reason to doubt that the BIA did the same. *See id.* at 3–5. Absent such a reason, neither the IJ nor the BIA was "required to write an exegesis on every contention." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1207 (10th Cir. 2008) (internal quotation marks omitted). The BIA simply needed to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (internal quotation marks omitted). It satisfied this standard.

Finally, Petitioner argues that the BIA incorrectly relied on *Matter of D-R-*, 25 I&N Dec. 445 (BIA 2011), to dismiss his contention that "the police used drugs as a pretense for targeting him and that the 'only logical explanation' for his mistreatment by police is that officers from both towns were aware of his family ties and family history, including his father's prior refusal to participate in police corruption." A.R. at 4. He argues that *Matter of D-R-* applies only when the applicant *and* the government submit conflicting evidence.

We disagree. *Matter of D-R-* explained that an IJ "is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record." 25 I&N Dec. at 455. Contrary to Petitioner's suggestion, this principle applies even when only the applicant puts forward evidence to support a withholding-of-removal claim. *See Garland v. Ming Dai*, 593 U.S. 357, 371 (2021) ("[E]ven if the BIA treats an alien's evidence as credible, the agency need not find his evidence persuasive or sufficient to meet the burden of proof."); *Gutierrez-Orozco v. Lynch*, 810 F.3d 1243, 1246–47 (10th Cir. 2016) (declaring that applicant's submitted evidence failed to establish eligibility for cancellation of removal even though the government did not submit evidence contradicting his story because "even credible testimony may not be persuasive or sufficient in light of the record as a whole" (internal quotation marks omitted)).

### B.    CAT

Petitioners raises four challenges against the BIA's denial of CAT relief. Again, we reject them all. First, Petitioner argues that he "suffered past torture when he was arrested and detained on five (5) separate occasions under false pretenses." Pet'r Br. at 36. We are not persuaded.

Torture is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by, or at the instigation of, or with the consent or acquiescence of, a public official." 8 C.F.R. § 1208.18(a)(1). It is an "an extreme form of cruel and inhuman treatment and does not include lesser forms

of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Id.* § 1208.18(a)(2).

Although petitioner testified that he was repeatedly arrested and detained by Mexican police officers, he concedes that no one physically harmed him during these incidents. These brief detainments, unaccompanied by any violence, do not constitute torture. Indeed, "brief detentions, where little or no physical harm occurs, generally do not [even] rise to the level of persecution," a less severe harm than torture. *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 342 (3d Cir. 2008); *see Hernandez v. Garland*, 52 F.4th 757, 769 (9th Cir. 2022) ("Demonstrating torture [under the CAT] requires a much greater showing of harm than demonstrating persecution, itself an extreme concept." (internal quotation marks omitted)); *Kushakov v. Ashcroft*, 97 F. App'x 863, 867 n.2 (10th Cir. 2004) ("[B]eing detained for a short period of time generally does not rise to the level of persecution unless the detention is accompanied by significant physical mistreatment.").

That leaves the incident in which Petitioner attempted to flee police by jumping off a two-story bridge into a river. This incident also does not rise to the level of torture. To be sure, Petitioner testified that officers "pulled [him] out" of the river and "beat" him, A.R. at 207, causing injuries to his head, face, and back, *see id.* at 208. He admitted, however, that he had no memory of the incident "[f]rom the point where [he] fell in the river, they pulled me out." *Id.* at 209. The BIA said that Petitioner had "not submitted sufficient evidence to establish that the police caused the injuries that he sustained to his back after jumping off a bridge into a river." *Id.* at

5. It is pure speculation whether the officers beat the Petitioner. And there is no evidence that the officers intended to inflict severe physical harm when they confronted Petitioner at the bridge.

Second, Petitioner challenges the IJ's determination that Petitioner could safely relocate within Mexico to avoid future torture. The BIA, however, did not rely on that ground to affirm the IJ's determination that Petitioner failed to show a "risk of future torture." *Id.* We therefore do not review this issue. *See Uanrero v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (explaining that where the BIA issues a "brief order" affirming an IJ decision, "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance").

Third, Petitioner contends that the IJ "misapplied the under-color-of-law element" when analyzing the March 2021 incident. Pet'r Br. at 42. He argues that the IJ "held" that the officers were *not* acting under the color of law during the incident. *Id.* at 43–44. But both the IJ and BIA ruled against Petitioner even when assuming, without deciding, that the "police officers were acting under the color of law." A.R. at 143 (IJ); *see id.* at 5 (BIA).

Finally, Petitioner argues that the IJ and the BIA did not properly consider the country-conditions report in light of his personal testimony. We disagree. We cannot say that the report, by itself, compels the conclusion that Petitioner will more likely than not be tortured if returned to Mexico, by or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity. The report states that "[c]ivil society groups reported torture was a

9

generalized practice" in Mexico. A.R. at 434. It also states that victims of this torture "most often accused *municipal police*, public security, and state attorney general's offices of torture or inhuman treatment." *Id.* (emphasis added). But the report also stated that "[t]he government generally took credible steps to identify and punish officials who have committed human rights abuses," *Id.* at 428, and that the Mexican "Attorney General's Office was investigating more than 2,600 torture-related inquiries and conducting 700 investigations," *Id.* at 435. Moreover, "by itself, pervasive violence in an applicant's country generally is insufficient to demonstrate the applicant is more likely than not to be tortured upon returning there." *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1362 (10th Cir. 2019).

### III.    CONCLUSION

We **DENY** the petition for review.

Entered for the Court

Harris L Hartz
Circuit Judge