Alfonso PASCUAL–GARCIA,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–71844.
Agency No. A29–277–910.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 16, 2003.

Decided Aug. 6, 2003.

Before NOONAN, KLEINFELD, and WARDLAW, Circuit Judges.

### MEMORANDUM*

Alfonso Pascual–Garcia petitions for review of the Board of Immigration Appeals' decision denying his requests for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252(b) and we grant the petition.

■ This is a mixed motive case. Although the BIA is correct that Pascual– Garcia, an indigenous Mayan native of rural Guatemala, may have been persecuted because he witnessed his father's murder, it disregarded compelling evidence that Pascual–Garcia was also persecuted on the basis of an imputed political opinion. *See Sangha v. INS,* 103 F.3d 1482, 1489–90 (9th Cir.1997) (imputed political opinion provides basis for asylum relief). To establish eligibility for asylum, Pascual–Garcia needed to show only that he was persecuted, in part, on a statutory ground. *See Melkonian v. Ashcroft,* 320 F.3d 1061, 1068 (9th Cir.2003); *Garcia–Ramos v. INS,* 775 F.2d 1370 (9th Cir.1985).

Neither the IJ nor the BIA questioned Pascual–Garcia's credibility. Pascual–Garcia's father was a long-time member and prominent leader of the Civil Patrols, a government unit, with a history of confrontations with the guerillas, including specifically Reyes. Pascual–Garcia testified that his father's murderer, whom Pascual–Garcia recognized as a neighbor and guerilla leader named Reyes, threatened to kill him if he either "turned him over or . . . told anybody that he was a guerilla." When Reyes learned that he was wanted by Guatemalan soldiers, he believed it was Pascual–Garcia who had informed upon him (even though this was in fact not true). Reyes began looking for the boy, causing him to flee the country. This evidence shows Reyes believed Pascual–Garcia was aligned with the government and anti-guerilla (because if he were anti-government—unlike his father—he would not have informed), and pursued Pascual–Garcia on that basis.

■ A rebuttable presumption of a well-founded fear of future persecution arises upon a finding of past persecution. *See, e.g., Hoxha v. Ashcroft,* 319 F.3d 1179, 1182 (9th Cir.2003); *Ruano v. Ashcroft,*

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

301 F.3d 1155, 1159 (9th Cir.2002). Because substantial evidence compels a finding of past persecution on the basis of imputed political opinion, we must remand to give the government an opportunity to rebut this presumption. *See Ventura v. INS*, 317 F.3d 1003, 1005 (9th Cir.2003).

■ Because the BIA denied Pascual–Garcia's claim for withholding of deportation solely on the ground that he did not satisfy the lower threshold for asylum relief, we must remand Pascual–Garcia's withholding claim for further proceedings.

■ The BIA applied an incorrect legal standard in determining that Pascual–Garcia failed to state a prima facie case for relief under the CAT because he failed to establish that he would be tortured "by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim." A CAT claim does not require that the torture would occur while the victim is in the custody or physical control of a public official. *See Li Chen Zheng v. Ashcroft*, 332 F.3d 1186 (9th Cir.2003) (remanding CAT claim where petitioner feared retaliation from "snakeheads," i.e., "human smugglers" of Chinese immigrants). We therefore must remand this claim as well.

■ We lack jurisdiction to grant Pascual–Garcia's request for voluntary departure. *See* 8 U.S.C. § 1229c.

**PETITION GRANTED, ORDER VACATED, and REMANDED.**

KLEINFELD, Circuit Judge, dissenting.

I respectfully dissent. This case turns on the standard of review. We may reverse the BIA decision where the evidence not only supports the contrary conclusion, but "compels" the contrary conclusion that Pascual–Garcia was persecuted because of his political opinion.[1] No one should have to witness his father's murder, but I respectfully disagree with the majority that Reyes statement "compels" a finding that Pascual–Garcia has met his burden of establishing persecution of himself (as opposed to his father) because of his political opinion.

There is no evidence in the record that Pascual–Garcia had any political opinion of his own when his father was murdered or when he left Guatemala. While Reyes's threat to Pascual–Garcia "that if I, uh, turned him over or that if I told anybody that he was a guerrilla man that he was going to kill me"[2] might support the inference that Reyes imputed the father's political opinion onto his eleven year old son, Reyes's threat certainly does not *compel* such a finding. Rather, it is perfectly reasonable to conclude that Reyes threatened Pascual–Garcia to keep Pascual–Garcia—a witness to the murder—quiet. Given this reasonable interpretation of the threat, I cannot agree that the record compels a conclusion that Pascual–Garcia was threatened on account of an imputed political opinion.[3] Even if his father's murderer had threatened Pascual-Garcia because he imputed a pro-government political opinion to the eleven year old boy, the evidence does not permit an inference that he faces a risk of persecution on account of his opinion if he returns. There is no reason evident from the record why he must re-

1. *INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), *Singh v. INS*, 134 F.3d 962, 966 (9th Cir. 1998).

2. A.R. at 309.

3. *Molina–Estrada v. INS*, 293 F.3d 1089, 1094–95 (9th Cir.2002) (holding in the withholding of removal context that the factual record did not compel a finding of imputed political opinion where the alien's father, a member of the Guatemalan National Order

turn to the same village, or that his father's murderer is still there. And if he does, he is now twenty-two, not eleven. He is likely to recognize the murderer much more easily then the murderer can recognize him.

Because Pascual–Garcia has not presented evidence "so compelling that no reasonable factfinder could find"[4] that Pascual–Garcia has not established past persecution, no remand is necessary to allow the INS to rebut the presumption of a well-founded fear of future persecution. On this record, Pascual–Garcia's petition should be denied.[5]

fighting the guerrillas, was killed in a guerrilla bombing of his home and where the guerillas then called his remaining family members and threatened them).

4. *Singh,* 134 F.3d at 966 (citing *Elias–Zacarias,* 502 U.S. at 483–84).

5. *Molina–Estrada,* 293 F.3d at 1095.