**Adel Ahmad ZAZA; Fatima Abu Ruman; Zaina Zaza; Anas Zaza, Petitioners,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–71464.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 2004.

Decided Sept. 7, 2004.

Elias Z. Shamieh, Esq., Law Offices of Shamiyeh & Shamieh, Amos Lawrence, Esq., Attorney at Law, San Francisco, CA, for Petitioners.

Amos Lawrence, Esq., Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Office of the District Counsel, Department Of Homeland Security, San Francisco, CA, Linda S. Wernery, Esq., William C. Peachey, U.S. Department of Justice, Washington, DC, for Respondent.

Before: PREGERSON, KOZINSKI and HAWKINS, Circuit Judges.

MEMORANDUM *

■ Ruman argues that, though she filed for asylum more than a year after April 1, 1997, she is nonetheless eligible for asylum because of "changed circumstances." *See* 8 U.S.C. § 1158(a)(2)(B), (D); 8 C.F.R. § 208.4(a)(2)(ii). But she did not raise the timeliness issue in her notice of appeal to the Board of Immigration Appeals (BIA), nor did she file a timely brief with the BIA. *See* A.R. 12, 30. Therefore, she did not "exhaust all administrative remedies available to her as of right," and so we lack jurisdiction to review the immigration judge's (IJ) denial of her asylum claim. *See* 8 U.S.C. § 1252(d)(1).

■ To be eligible for withholding of deportation, Ruman must show a "clear probability" of persecution; that is, she must establish that she would more likely than not be persecuted on account of a protected ground if she were to return to Jordan. *See INS v. Stevic,* 467 U.S. 407, 429—30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *Hoxha v. Ashcroft,* 319 F.3d 1179,

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1185 (9th Cir.2003). Ruman concedes that the routine harassment and name-calling she experienced in Jordan do not rise to the level of persecution. She contends, though, that the threats by members of the Muslim Brotherhood that she "should pay a price" and "should be taught a lesson"—in a context where some women who did not wear the hijab had acid thrown on them or were cut with blades—establish the requisite probability of future persecution.

While these threats may support a well-founded fear of persecution, the bar for withholding of deportation is considerably higher. The treatment of Jordanian women who do not wear the hijab can take various forms, from the verbal harassment that Ruman says she suffered to the physical mutilation she says she saw other women suffer. Generalized statements to the effect that Ruman "should pay a price" and "should be taught a lesson" may refer to any treatment within that range, and Ruman does not show that the threats in her case support a 50% probability of actual physical harm. The IJ found as much and, because we cannot say that no reasonable factfinder could agree with him, we must affirm his factual findings. *See* 8 U.S.C. § 1252(b)(4)(B).

**PETITION DENIED.**

PREGERSON, Circuit Judge,
Dissenting.

I believe that when the Muslim Brotherhood's threats that Ms. Ruman "should pay a price" and "should be taught a lesson" are understood in the larger context in which they were made, it becomes clear that she—and her three young daughters—face a likelihood of persecution if forced to return to Jordan. These threats come from a group that "teaches" women lessons by throwing acid on them, beating them, and assaulting them with knives for their refusal to wear the hijab or to other-wise conform to the Muslim Brotherhood's fundamentalist interpretation of Islam. Furthermore, Ms. Ruman was targeted specifically for refusing to wear a garment associated with female modesty. Based on their threats and name-calling, the Muslim Brotherhood views Ms. Ruman's and other women's rejection of that garment as sexual misconduct. In a country in which the Country Reports describes violence against women as "common" and cites widespread government inaction toward, if not outright acceptance of, "honor killings" of women deemed to have committed some sexual misconduct, the Muslim's Brotherhood's threats against Ms. Ruman for not acting as a "Muslim woman," take on particular menace. In the years since Ms. Ruman and her family fled to the United States, the Muslim Brotherhood has only intensified its campaign to terrify women into conforming with the group's strict interpretation of Islam. Nevertheless, the Jordanian government has remained unable or unwilling to stop such attacks.

Taken together the threats against Ms. Ruman, reports of such acid, knife, and other physical attacks on nonhijab-wearing women, and government inaction in the face of violence against women sufficiently demonstrate the requisite "clear probability" that Ms. Ruman's life or freedom would be threatened upon return to Jordan because of her religion and political opinion that rejects the fundamentalist interpretation of Islam. Accordingly, I would find that Ms. Ruman is eligible for withholding of removal. *See Lim v. INS*, 224 F.3d 929, 936 (9th Cir.2000) (finding that unfulfilled threats, are within that category of conduct indicative of a danger of future persecution).

I respectfully dissent.