**Valerik AVEDIAN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

**No. 03–70481.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2004.

Decided Sept. 8, 2004.

Howard R. Davis, Esq., Van Nuys, CA, for Petitioner.

Davis Miller & Neumeister, Van Nuys, CA, Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, M. Jocelyn Wright, Esq., U.S. Department of Justice, Civil Division, Jennifer Paisner, DOJ—U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: B. FLETCHER, HANSEN,* and RAWLINSON, Circuit Judges.

MEMORANDUM **

Petitioner Valerik Avedian ("Avedian") is a native and citizen of Iran who seeks suspension of deportation, asylum, withholding of deportation, and relief under the Convention Against Torture ("CAT"). An Immigration Judge ("IJ") denied relief, and the Board of Immigration Appeals ("BIA") affirmed. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a)(1) (1996), as amended by the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996). We grant Avedian's

petition for review in part, deny it in part, and remand.

I.

Avedian first argues that the IJ violated her right to due process by refusing to advance the merits hearing on her application for suspension of deportation. We are not persuaded. Avedian was granted a full and fair hearing on May 12, 1997, before the IJ denied her relief. *See Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir.2000) ("[A]n alien who faces deportation is entitled to a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf.") (citation omitted); *cf. Fuentes v. Shevin*, 407 U.S. 67, 80, 81–83, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (applying the rule that due process guarantees the right to be heard "at a meaningful time" to hold unconstitutional Florida and Pennsylvania statutes that allowed for the summary seizure of goods without a *pre-deprivation* hearing) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). The IJ correctly applied the stop-time rule after IIRIRA's effective date, *see Ram v. INS*, 243 F.3d 510, 514 (9th Cir.2001),[1] and the handwritten ruling on Avedian's motion to advance is not enough to prove that the IJ was biased. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (holding that ex-

---

\* Honorable David R. Hansen, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

We have amended the caption to reflect that John Ashcroft, Attorney General, is the proper respondent. The INS ceased to exist on March 1, 2003. *See Falcon Carriche v.*

*Ashcroft*, 350 F.3d 845, 848 n. 1 (9th Cir. 2003).

1. This case is not like *Guadalupe–Cruz v. INS*, 240 F.3d 1209, 1211 (9th Cir.2001), which reversed an IJ's application of the stop-time rule at a hearing held four days before IIRIRA's effective date. Avedian never had, and was never scheduled to have, a hearing on her suspension application before the stop-time rule took effect.

pressions of "impatience" or "annoyance" are not enough to prove bias). Although Avedian's argument reflects understandable frustration with the retroactive effect of the stop-time rule, we have upheld the rule against a due process challenge. *Ram*, 243 F.3d at 516–17.

## II.

Avedian next argues that the decision denying her asylum is not supported by substantial evidence. *See Hoque v. Ashcroft*, 367 F.3d 1190, 1194 (9th Cir.2004) (setting out substantial evidence standard). We agree. The evidence in the record compels the conclusion that Avedian has a well-founded fear of future persecution in Iran because she is a member of a "disfavored" minority group and because she is particularly likely to be singled out from within that group. *See Kotasz v. INS*, 31 F.3d 847, 853–54 (9th Cir.1994); *see also Mgoian v. Ashcroft*, 184 F.3d 1029, 1035 n. 4 (9th Cir.1999).

## A.

Avedian testified credibly that she is an Armenian Christian. Iran's Christian minority makes up less than one percent of the population, and the State Department has reported, *inter alia*, that the "Government discriminates against religious ... minorities" and that the "Government frequently charges members of religious minorities with crimes such as 'confronting the regime' and apostasy." Bureau of Democracy, Human Rights, and Labor, United States Dep't of State, Iran: Country Reports on Human Rights Practices— 2000, 2, 6 (February 2001) ("2000 Iran Country Report"). Although a 1997 State Department profile of asylum claims states

that Armenian Christians are treated better than other religious minorities in Iran, *see* Bureau of Democracy, Human Rights, and Labor, United States Dep't of State, Iran—Profile of Asylum Claims and Country Conditions 10–11 (August 1997) ("1997 Iran Asylum Report"), the State Department has also reported that "[r]eligious minorities are especially vulnerable to the regime's intolerance" and to attacks by extremist elements, *id.* at 3; that "life is very difficult for religious minorities in Iran," *id.* at 9; and that *"[a]ll* religious minorities suffer varying degrees of officially sanctioned discrimination, particularly in the areas of employment, education and housing." 2000 Iran Country Report at 10 (emphasis added, citation omitted). Avedian experienced this discrimination first-hand, when she lost her job after the Islamic revolution because of her religion.

Avedian's experience and the State Department's statements may not establish a "pattern and practice" of persecution, *Kotasz*, 31 F.3d at 852, but they compel the conclusion that Christians are at least a "disfavored" minority. *Id.* at 853.

## B.

Because the record indicates that Christians are significantly disfavored in Iran, the level of particular risk Avedian must show in order to establish a well-founded fear is "comparatively low." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1183 (9th Cir. 2003). Avedian testified credibly that she has been ordered, since leaving Iran, to appear for questioning before a local "revolutionary committee." This fact provides strong support for Avedian's claim to a well-founded fear.[2] *See id.* at 1184 (rely-

---

2. Avedian also testified that she has been placed on a "blacklist" of people not allowed to leave Iran. Because the State Department has reported that Armenian Christians are ordinarily allowed to leave the country freely, 1997 Iran Asylum Report at 11, this blacklisting indicates that Avedian faces an "individu-

ing on a similar order to appear for an "informative conversation" in holding that the petitioner had a well-founded fear). The State Department has reported that arbitrary arrest and detention are common in Iran, including in local Revolutionary Guard offices, and that "there are numerous, credible reports that security forces ... continue to torture detainees and prisoners." 2000 Iran Country Report at 3, 4.

In addition to the order to appear for questioning, Avedian's claim is supported by evidence that she and her immediate family have significant ties to the United States: Avedian has now lived in this country for fifteen years, and she worked in Tehran for seventeen years for the Iran America Society ("IAS"), which was apparently a sub-agency or affiliate of the United States Information Service ("USIS"); Avedian's father was the chief accountant for the USIS; and Avedian's two brothers worked for the American embassy in Iran and have been granted asylum in the United States.[3] The State Department has documented the Iranian government's intolerance for those viewed as sympathetic

to the United States. 2000 Iran Country Report at 6 (reporting the trial of one cleric for, *inter alia*, "promoting friendly relations with the United States"); *see also id.* at 14 (stating that citizens returning from abroad are sometimes subjected to search and extensive questioning).

## C.

In sum, the evidence compels the conclusion that Avedian has a well-founded fear of persecution in Iran. She is a member of a disfavored Christian minority who has been ordered to appear for questioning and who has significant ties to the United States. This evidence, viewed in light of the State Department's own reports regarding Iran, compels the conclusion that Avedian's fear of future persecution is "objectively reasonable."[4] *Mgoian*, 184 F.3d at 1035; *see also Knezevic v. Ashcroft*, 367 F.3d 1206, 1212 (9th Cir.2004) ("Even a ten percent chance that the applicant will be persecuted in the future is enough to establish a well-founded fear.") (citation omitted).

---

alized risk" of persecution. *Hoxha*, 319 F.3d at 1183.

At one point in his oral decision, the IJ stated that Avedian had "presented insufficient concrete and/or credible evidence from which the Court might infer that respondent is on any 'black list' in Iran." If the IJ intended this as an adverse credibility determination, it is not supported by "specific, cogent reason[s]" for his disbelief. *Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir.1994). The IJ's statement also does not take into account either the difficulty Avedian would face in trying to produce corroborating documentation from Iran, *see Sidhu v. INS*, 220 F.3d 1085, 1091–92 (9th Cir.2000), or the significant specificity Avedian did provide in her February 1996 declaration.

3.  Avedian received at least two letters of commendation for her service to the IAS, including one, from Executive Director Christopher

Snow, for her "exceptional" work during a "particularly difficult" period for the agency, when Avedian "worked virtually alone" to maintain personnel files and handle payroll and financial matters. Altogether, Avedian, her father, and her brothers served American interests in Iran for a total of 51 years.

4.  We note that this conclusion is not affected by the IJ's brief discussion of parliamentary elections in Iran. *See Borja v. INS*, 175 F.3d 732, 738 (9th Cir.1999) (en banc) (holding that the BIA must provide an "individualized analysis of how changed conditions will affect the specific petitioner's situation") (internal quotation marks omitted, quoting *Garrovillas v. INS*, 156 F.3d 1010, 1017 (9th Cir.1998)). The government never argued to the IJ or BIA, nor did they find, that conditions in Iran have changed so "fundamental[ly]" that they render Avedian's fear unfounded. *Baballah v. Ashcroft*, 367 F.3d 1067, 1078 (9th Cir. 2004) (quoting 8 C.F.R. § 208.13(b)(1)).

## III.

Avedian's well-founded fear of persecution establishes her eligibility for asylum, and we remand to the Attorney General so that he may exercise his discretion as to whether to grant that relief. We deny the petition as to Avedian's withholding and CAT claims, as we cannot say that the evidence compels the conclusion that Avedian has met the higher burdens of proof for those forms of relief. *See Hoxha,* 319 F.3d at 1185 (setting out the "clear probability" standard for withholding); *Kamalthas v. INS,* 251 F.3d 1279, 1284 (9th Cir.2001) (setting out the "more likely than not" standard for CAT relief) (quoting 8 C.F.R. § 208.16(c)(2)). We also deny the petition for review as to Avedian's due process claim.

**GRANTED IN PART AND DENIED IN PART; REMANDED.**