UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEISY YAQUELIN ORDONEZ-GODOY; CALEB JOEL SAUCEDA-ORDONEZ, <br><br> Petitioners, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, <br><br> Respondent. | No.   17-71840 <br><br> Agency Nos.      A206-843-750 <br> A206-843-751 <br><br><br> ORDER WITHDRAWING MEMORANDUM DISPOSITION, GRANTING PETITION FOR REHEARING, AND DENYING PETITION FOR REHEARING EN BANC |

Before:  ROGERS,[*] BYBEE, and WATFORD, Circuit Judges.

Judges Bybee and Watford voted to grant the petition for rehearing, and Judge Rogers voted to deny the petition for rehearing.  The memorandum disposition filed on June 29, 2018 is withdrawn.

Judges Bybee and Watford voted to deny the petition for rehearing en banc, and Judge Rogers recommended denying the petition for rehearing en banc.  The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc.  Fed. R. App. P. 35.

---

[*]     The Honorable John M. Rogers, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

The petition for panel rehearing is GRANTED.  The petition for rehearing en banc is DENIED.

FILED

**NOT FOR PUBLICATION**

NOV 07 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEISY YAQUELIN ORDONEZ-GODOY; CALEB JOEL SAUCEDA-ORDONEZ, <br><br> Petitioners, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, <br><br> Respondent. | No. 17-71840 <br><br> Agency Nos. A206-843-750 <br> A206-843-751 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 11, 2018
Pasadena, California

Before: ROGERS,[**] BYBEE, and WATFORD, Circuit Judges.

Deisy Ordonez–Godoy appeals the Board of Immigration Appeals' ("BIA")

denial of her petition for asylum, withholding of removal, and relief under the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable John M. Rogers, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Convention Against Torture. "Where, as here, the BIA adopts the IJ's decision while adding some of its own reasoning, we review both decisions." *Lopez–Cardona v. Holder*, 662 F.3d 1110, 1111 (9th Cir. 2011). "We review constitutional claims and questions of law *de novo* and review factual findings under the deferential substantial evidence standard, treating them as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). The IJ found Ordonez–Godoy credible, and thus we accept her statements as true.

To be eligible for asylum, Ordonez–Godoy must establish that she is unable or unwilling to return to Honduras "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004) (quoting 8 U.S.C. § 1101(a)(42)(A)). "[I]f an applicant establishes past persecution, it triggers a rebuttable presumption of a well-founded fear of future persecution." *Salazar–Paucar v. INS*, 281 F.3d 1069, 1073–74 (9th Cir. 2002). "We have repeatedly held that threats may be compelling evidence of past persecution, particularly when they are specific and menacing and are accompanied by evidence of violent confrontations [and] near confrontations." *Mashiri*, 383 F.3d at 1119.

2

**1.** Ordonez–Godoy established past persecution based on her membership through marriage in a politically active family. Ordonez–Godoy and her husband's family lived in a small town in Honduras controlled by the National Party. A family organization, the Figueroas, backed the party through violence and intimidation. The Figueroas began targeting Ordonez–Godoy's family, who opposed the National Party, in 2011 when her husband drove a man the Figueroas had shot to the hospital. Over the next three years, until Ordonez–Godoy entered the United States, Ordonez–Godoy's husband and family received death threats by phone and in person, which were specific, direct, and menacing, and accompanied by violent and fatal attacks. Once, when Ordonez–Godoy's husband and father were running late for work, they drove past a vehicle resembling their family car, which had been attacked, killing two people and injuring two others inside the car. Shortly after this shooting, the Figueroas called and threatened Ordonez–Godoy's father-in-law, stating that the family "had gotten lucky" and "were still in danger of death." Ordonez–Godoy's husband fled the country and entered the United States in April 2012.

While Ordonez–Godoy remained in Honduras, four members of her husband's family were murdered and three others survived assassination attempts. Her husband's aunt was shot in the face while holding her baby in her lap and the

3

aunt's partner was killed, but the kids in the home "were able to run under the beds and hide." Ordonez–Godoy's husband's uncle was shot while laying on a hammock outside with his children, and Ordonez–Godoy and her in-laws heard the shots from their home. The murders were coming "one after another." The family lived in fear, stayed at home, ceased working, and the police did nothing to address the threats. Family members left the city, went into hiding, or fled the country. Ordonez–Godoy entered the United States with her five-year-old son in July 2014. The threats, attacks, and murders provide compelling evidence of past persecution. *See id.* at 1121 ("Viewed cumulatively, . . . evidence of a death threat, violent physical attacks against [the petioner's] husband and sons, a near-confrontation with a violent mob, vandalism, economic harm and emotional trauma compels a finding of past persecution.").

**2.** Having shown past persecution, Ordonez–Godoy is entitled to a presumption of a well-founded fear of future persecution. *Id.* at 1119. An applicant may establish a well-founded fear by showing a "pattern or practice" of persecution of people she is "similarly situated" or "closely tied" to. *Mgoian v. I.N.S.*, 184 F.3d 1029, 1035–36 (9th Cir. 1999) (citations omitted). A family is a "prototypical example" of a similarly situated group. *Id.* at 1036 (citations omitted). "[W]e have explicitly held that an individual applicant may be eligible

4

for asylum, even in the absence of direct persecution against [the petitioner] personally, if she is able to demonstrate a well-founded fear of persecution based on acts of violence against her friends or family members." *Id.* Ordonez–Godoy has established a well-founded fear of future persecution.

The BIA held that Ordonez–Godoy could not show that "any harm suffered by her or her relatives was on account of her family or a political opinion." The facts compel a contrary conclusion. The attacks against Ordonez–Godoy's family show a pattern of killing the members of her husband's family who participated in politics and those who supported them. Ordonez–Godoy is similarly situated to her husband's family; she lived with them and participated in the political campaigns that got them killed. Although the Figueroas once told Ordonez–Godoy that they had no particular interest in her specifically, that fact alone is not dispositive—neither physical harm nor direct threats are required to find persecution. *Mashiri*, 383 F.3d at 1120; *Mgoain*, 184 F.3d at 1037; *see also Hoxha v. Ashcroft*, 319 F.3d 1179, 1183 (9th Cir. 2003) ("Because the record reveals that the amount of persecution directed toward [the targeted group] generally is extensive, the level of individualized risk [the petitioner] must show . . . is comparatively low."). As long as her husband's family remains a target, Ordonez–Godoy is in danger, even if she is collateral to the political feud.

In *Mgoian v. I.N.S.*, the petitioner's uncle was murdered, and two other uncles and her parents fled the country in light of death threats. 184 F.3d at 1033–34. The BIA found the petitioner failed to "link" these events "in any meaningful way to her fear of being persecuted." *Id.* at 1033. On appeal, we granted the petition for review, finding the petitioner showed "much more than mere isolated violence" and provided "ample proof that the violence against her family members [was] 'closely tied' to her." *Id.* at 1036–37. The "violent acts against other members of the group put her on notice that she may be next." *Id.* at 1037. Like the petitioner in *Mgoian*, Ordonez–Godoy "fully demonstrated that acts of violence occurred against her family members and that those acts are sufficiently connected to her personally to justify a well-founded fear of persecution in any person similarly situated." *Id.* at 1036.[1] Ordonez–Godoy provided facts that would compel a reasonable fact finder to find she has a well-founded fear of future persecution.

We grant Ordonez–Godoy's petition for review, reverse the decision of the BIA, and remand so the Attorney General may exercise his discretion to determine whether to grant Ordonez–Godoy asylum. 8 U.S.C. § 1158(b)(1).

---

[1] Because we find that Ordonez–Godoy established a claim of asylum, we do not address her remaining claims.

**PETITION GRANTED.**

**Ordonez-Godoy v. Sessions, 17-71840 (CA9)**
**Judge Rogers, Circuit Judge, dissenting**

The BIA's denial of Ordonez-Godoy's application for asylum should be upheld. "In order to reverse the BIA, we must determine 'that the evidence not only *supports* [a contrary] conclusion, but *compels* it—and also compels the further conclusion' that the petitioner meets the requisite standard for obtaining relief," *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014) (alteration in original) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)), but here the record does not compel reversal.

Substantial evidence supports the BIA's conclusion that Ordonez-Godoy did not suffer past persecution. Ordonez-Godoy was never physically harmed or directly threatened by the Figueroas. Ordonez-Godoy credibly testified to threats against her husband by the Figueroas, but she also testified that she was not on the Figueroas hit list, and she did not testify that any threats were made against her specifically. Moreover, she testified that during her only direct interaction with the Figueroas— when an armed group of gang members came to her home shortly after her husband fled Honduras—a gang member told her he was friends with her father and expressed no interest in harming her. Ordonez-Godoy remained in the country for nearly two years following the incident without harm.

Absent a sufficient showing of past persecution, Ordonez-Godoy cannot benefit from a presumption of a fear of future persecution, and substantial evidence supports the BIA's determination that Ordonez-Godoy did not establish a well-founded fear of future persecution on account of a protected ground. First, substantial evidence supports the BIA's conclusion that Ordonez-Godoy is unlikely to be persecuted based on her relationship with her husband's politically active family. During Ordonez-Godoy's single direct encounter with the Figueroas they expressed no desire to harm her even though they were aware that she was living with her husband's family; she lived in her husband's family's home for nearly two more years without incident; and there is no evidence that anyone in Ordonez-Godoy's hometown has been specifically targeted because of his or her relationship with the Sauceda-Velasquez family.

Substantial evidence also supports the BIA's conclusion that Ordonez-Godoy did not establish a well-founded fear of future persecution based on her political opinion. It is true that the Figueroas have targeted her husband's uncle and cousin, who were political candidates for mayor, as well as her husband's aunt and other uncle, who served as campaign managers. But the record here does not compel the finding that the Figueroas imputed these political beliefs to Ordonez-Godoy. Again, Ordonez-Godoy has had a single interaction with the Figueroas and they expressed no interest in harming her, despite knowing that she lived with her husband's

politically active family. She lived with her husband's family without incident throughout the mayoral campaign, and she lived in Honduras without harm for more than a year after the assassination of her husband's uncle. Her husband's parents have continued to live in Honduras since that time without harm, despite the inclusion of her father-in-law on the Figueroas' hit list.

The IJ and BIA looked at the record and decided that, although awful violence had been visited upon members of Ordonez-Godoy's family, Ordonez-Godoy herself had not demonstrated that she was the target of such violence. Regardless of whether or not we agree with that conclusion, there is substantial evidence to support it, and reasonable factfinders would not be compelled to disagree with it. Application of the deferential standard of review set forth by the Supreme Court and this Circuit requires denial of the petition.

Given that Ordonez-Godoy's asylum petition was properly denied, I address briefly her remaining claims. First, because Ordonez-Godoy failed to establish eligibility for asylum, she necessarily failed to satisfy the higher standard for withholding of removal. Second, we do not have jurisdiction to consider the merits of Ordonez-Godoy's CAT claim because Ordonez-Godoy did not appeal the IJ's adverse CAT decision to the BIA, and so failed to exhaust her administrative remedies with respect to that claim.

Finally, Ordonez-Godoy was not denied due process. First, the transcript of Ordonez-Godoy's hearing does not support her assertion that the IJ demonstrated actual bias or prejudgment. Second, Ordonez-Godoy's claim that the IJ denied her due process by denying her motion to consolidate was not adequately raised before the BIA. Last, the BIA's evidentiary rulings did not deny Ordonez-Godoy due process.

The petition for review should be denied.