NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 6 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CHIRAJAN SUBEDI,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No. 17-73360

Agency No. A209-171-079

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 7, 2019
Portland, Oregon

Before: GILMAN,[**] PAEZ, and RAWLINSON, Circuit Judges.

Chirajan Subedi, a native and citizen of Nepal, petitions for the review of a

decision by the Board of Immigration Appeals (BIA). The decision affirmed the

Immigration Judge's (IJ) denial of Subedi's application for asylum, withholding of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

removal, and relief under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252.

Our review is "limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Khudaverdyan v. Holder*, 778 F.3d 1101, 1105 (9th Cir. 2015) (citation omitted). We review questions of law de novo, *Rodriguez v. Holder*, 683 F.3d 1164, 1169 (9th Cir. 2012), and factual findings under the substantial-evidence standard, *Navas v. I.N.S.*, 217 F.3d 646, 657 (9th Cir. 2000) (citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Although the substantial-evidence standard demands deference, "deference does not mean blindness." *Li v. Ashcroft*, 356 F.3d 1153, 1158 (9th Cir. 2004). Reversal is appropriate if "the evidence compels a contrary conclusion from that adopted by the BIA." *Parada v. Sessions*, 902 F.3d 901, 909 (9th Cir. 2018) (quoting *Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010)).

We conclude that substantial evidence does not support the BIA's finding with regard to whether Subedi suffered past persecution in Nepal. The BIA also erred as a matter of law by not considering the cumulative effect of the threats and violence that Subedi suffered, by improperly placing the burden on Subedi to demonstrate that relocation was unreasonable, and by failing to consider all of the relevant evidence in support of his claim for relief under the CAT. We therefore grant Subedi's petition and remand this case to the BIA for further proceedings.

**1.** To determine whether Subedi "has made out a sufficient case of past persecution," we compare "the facts of this case to cases in which we have, and have not, found past persecution." *See Ruano v. Aschroft*, 301 F.3d 1155, 1159 (9th Cir. 2002). This court has consistently held "that physical harm constitutes persecution," *Lopez v. Ashcroft*, 366 F.3d 799, 803 (9th Cir. 2004) (citing *Chand v. I.N.S.*, 222 F.3d 1066, 1073 (9th Cir. 2000)), and that death threats, particularly when accompanied by something more, such as extortion, violence, or close "confrontations," rise to the level of past persecution as well, *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004) (collecting cases). In the present case, Subedi received multiple threats, including a death threat, and was beaten, kidnapped, and extorted by the Maoists. This evidence, taken together, would be enough to establish that Subedi suffered past persecution if the government was "unwilling or unable to control" the Maoists. *See Canales-Vargas v. Gonzales*, 441 F.3d 739, 743 (9th Cir. 2006). The BIA explicitly declined to reach that latter issue.

We respectfully disagree with the dissent's reliance on *Hoxha v. Ashcroft*, 319 F.3d 1179 (9th Cir. 2003), in reaching a contrary conclusion. In *Hoxha*, an ethnic Albanian from the former Kosovo region of Serbia testified that he and a friend had been beaten by an anonymous group of Serbs who overheard them speaking Albanian. *Id.* at 1181. This court, in concluding that Hoxha had introduced insufficient evidence to compel a finding of past persecution, focused

3

on the fact that the single incident of physical violence "was not connected with any particular threat" and that there was "no evidence that the attackers knew who Hoxha was or that they showed any continuing interest in him." *Id.* at 1182.

The attacks against Subedi, on the other hand, were connected with particular threats. Subedi was first attacked by the Maoists in November 2013, an attack that took place after Subedi received a letter threatening retaliation against him if he did not support the Maoists. That attack also took place after Subedi ignored his attackers' admonition not to vote when he tried to cross the path that they had blocked.

Moreover, the evidence establishes that the Maoists knew Subedi's identity and demonstrated a continuing interest in him. During the next incident in 2016, six to seven armed men, who identified themselves as Maoists, sought Subedi out at his own home, kidnapped him, took him to the jungle, and threatened him with death. Subedi escaped only by promising his attackers that he would pay them in the future. But Subedi did not intend to keep that promise, and his failure to pay supports Subedi's assertion that the Maoists remained interested in finding him. Subedi also introduced evidence suggesting that his attackers followed him to Kathmandu. Taken as a whole, sufficient evidence demonstrates that Subedi's attackers knew his identity and displayed a continuing interest in him.

These facts distinguish *Hoxha* from the case at hand. Here, substantial evidence does not support the BIA's basis for denying Subedi the right to proceed with his claim of past persecution.

**2.** If Subedi is able, on remand, to demonstrate that he suffered past persecution, this would "give[] rise to a presumption of a well-founded fear of future persecution and shift[] the evidentiary burden to the government to rebut that presumption." *See Canales-Vargas*, 441 F.3d at 743. The government would then be required to show, by a preponderance of the evidence, that there has been either a "fundamental change in circumstances," such that Subedi no longer has a well-founded fear of future persecution, or that Subedi could "avoid future persecution by relocating to another part of [Nepal] . . . , and under all the circumstances, it would be reasonable to expect [him] to do so." *See Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1089 (9th Cir. 2005) (quoting 8 C.F.R. § 1208.13(b)(1)(i)(A)–(B)). But the BIA improperly placed the burden on Subedi to demonstrate that relocation would be unreasonable. We thus remand this case to allow the agency to determine whether the government has met its burden and to consider whether Subedi is eligible for asylum or withholding of removal. *See I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam).

**3.** The BIA also erred as a matter of law in its review of Subedi's claim for relief under the CAT. As part of that review, the BIA must consider "all evidence

5

bearing on the likelihood of future torture . . . , including but not limited to past torture, possibility of safe relocation, country evidence of flagrant human rights violations, and other evidence regarding country conditions." *Barajas-Romero v. Lynch*, 846 F.3d 351, 364 (9th Cir. 2017) (citing 8 C.F.R. § 1208.16). This court has repeatedly reversed where the agency has failed to consider all relevant evidence. *See Parada*, 902 F.3d at 914–15 (collecting cases). In the present case, the BIA failed to consider, among other things, Subedi's testimony and evidence of country conditions as they pertained to his claim for relief under the CAT. Although the BIA did consider relocation, it erred in not clarifying the standard of proof it applied to its relocation analysis in the context of the CAT claim. *See Barajas-Romero*, 846 F.3d at 364 ("[A]lthough a petitioner bears the ultimate burden to prove he would be tortured if returned to his country, the petitioner does not bear the burden . . . to show that it is impossible to avoid torture by internally relocating within a country."). We therefore remand on this basis as well. *See Madrigal v. Holder*, 716 F.3d 499, 509 (9th Cir. 2013) (remanding where the BIA's decision provided an inadequate basis for review).

For all of the above reasons, we **GRANT** Subedi's petition and **REMAND** this case for further proceedings consistent with this disposition.

***Subedi v. Barr,*** **Case No. 17-73360**
**Rawlinson, Circuit Judge, dissenting:**

I respectfully dissent from the majority's granting of relief. In my view, the majority's outcome is inconsistent with the deferential substantial evidence standard that governs our review of decisions made by the Board of Immigration Appeals.

Although the majority cites the substantial evidence standard of review, it tips its hand by "determin[ing] whether Subedi had made out a sufficient case of past persecution" by comparing "the facts of this case to cases in which we have, and have not, found past persecution." *Majority Disposition*, p.3. Rather than discussing how the BIA assessed the evidence, the majority takes it upon itself to determine that the evidence "taken together would be enough to establish that Subedi suffered past persecution." *Id.*

Subedi recounted three incidents of persecution. The first, a letter informing Subedi that "it would not be good for him" if he failed to join the Maoist party, occurred in 2012. The second occurred in 2013, when Petitioner was hit with a stick, resulting to a fracture to his forearm. The third occurred almost three years later when a gun was pointed at Subedi, he was taken to the jungle near his home, and money was demanded. Subedi was slapped, but sustained no serious injury

1

and never paid any money.

These events were undoubtedly disturbing. However, under our precedent no finding of persecution was compelled. *See Reyes v. Lynch*, 842 F.3d 1125, 1137 (9th Cir. 2016) (explaining that under the substantial evidence standard the evidence must compel a conclusion contrary to that reached by the agency). Our precedent does not compel a conclusion contrary to that reached by the agency in this case because our precedent has upheld a finding of no persecution with more egregious facts. *See e.g., Hoxha v. Ashcroft*, 319 F.3d 1179, 1181 (9th Cir. 2003). In that case, the petitioner described being "subjected to harassment, threats and mistreatment since early childhood." *Id.* at 1181. The petitioner was "repeatedly told to leave the country . . . and that he would be harmed or killed if he chose to stay." *Id.* The petitioner was physically attacked by "a group of Serbs" resulting in "extensive facial bruises and two broken ribs." *Id.* We concluded that "[a]lthough [the petitioner's] experiences [were] disturbing and regrettable," they did not "evince actions so severe as to compel a finding of past persecution." *Id.* at 1182. The same is true in this case. And because no showing of persecution is compelled, Subedi bore the burden of showing inability to relocate. *See Kaiser v. Ashcroft*, 390 F.3d 653, 659 (9th Cir. 2004) (noting generally that if an applicant fails to establish past persecution, he bears the burden of showing inability to

2

relocate.)  Finally, Subedi never stated in his briefing to this court that the agency failed to consider all the evidence pertaining to relief under the Convention Against Torture (CAT).  Rather, Subedi maintained in his brief that he "satisfied his burden for CAT relief."

In sum, the majority has strayed far from the governing standard of review in granting relief, an approach with which I cannot agree.  I respectfully dissent.