# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3627

_____

| | | |
|---|---|---|
| Coyne's & Co., Inc., | * | |
| | * | |
| Plaintiff – Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Enesco, LLC, | * | |
| | * | |
| Defendant – Appellee. | * | |

_____

Submitted: October 16, 2008
Filed:  January 23, 2009

_____

Before LOKEN, Chief Judge, BYE and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Coyne's & Co. appeals the district court's[1] denial of its motion for a preliminary injunction.  We affirm.

I

In 2005, Coyne's & Co. ("Coyne"), a Minnesota corporation, entered into a distributor agreement (the "Agreement") with Country Artist, Ltd. ("CA"), a company

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

formed under the laws of England. The Agreement granted Coyne the exclusive right to sell, distribute, market, and advertise all CA products (the "Products"), as well as the use of the trademarks and copyrights associated with the Products, in the United States and Mexico through December 2007. In exchange, Coyne paid CA a 35-50% mark-up on the Products.

On August 10, 2007, CA was placed into receivership under the United Kingdom's Insolvency Act of 1986. The receivers for CA immediately entered into an asset sale agreement with Enesco, LLC ("Enesco"), an Illinois corporation. CA sold Enesco "such right, title and interest as it may have in the Business and Assets." Enesco "acknowledge[d] that [the CA name] may not be the property of [CA] and that accordingly any use of the Name by [Enesco] shall be at [Enesco's] own risk."

On August 21, 2007, Coyne received a letter from CA's receivers terminating the Agreement pursuant to Section 5.4, which allows a party to terminate the Agreement if the other party becomes insolvent. Because this section does not permit an insolvent party to use its own insolvency to terminate the Agreement, Coyne responded the termination had no legal effect.

On September 21, 2007, Enesco issued a press release announcing it would be distributing the CA Products in the United States.

On September 29, 2007, Coyne filed suit against Enesco, alleging claims under the Lanham Act, the Copyright Act, the Minnesota Deceptive Trade Practices Act, the Minnesota Uniform Trade Secrets Act, and Minnesota common law (interference with contractual relations, interference with prospective business relations, and misappropriation of goodwill). The next day, it filed a motion for a temporary retraining order and preliminary injunction to prevent Enesco from distributing the Products in the United States.

The district court denied Coyne's motion. The court found Coyne could not demonstrate a likelihood of success on its claims unless the Agreement was still in effect. Coyne argued CA's termination was not valid, and thus the Agreement was still in effect, because CA failed to comply with the Minnesota Franchise Act's (the "MFA") termination requirements.[2] The district court rejected this argument, finding Coyne did not pay CA a franchise fee, as required to bring the Agreement within the scope of the MFA. Therefore, the Agreement was not still in effect, and Coyne had not demonstrated a likelihood of success on its claims.

The district court also found, even if the Agreement was still in effect, Coyne likely did not have standing to pursue a claim for infringement of intellectual property rights against Enesco because it neither owned the copyrights and trademarks for the products, nor did it have an exclusive license to those copyrights and trademarks.

On appeal, Coyne asserts the district court incorrectly determined the Agreement was not subject to the MFA because Coyne paid CA a franchise fee.[3]

---

[2]The MFA provides in relevant part:

No person may terminate or cancel a franchise unless: (i) that person has given written notice setting forth all the reasons for the termination or cancellation at least 90 days in advance of termination or cancellation, and (ii) the recipient of the notice fails to correct the reasons stated for termination or cancellation in the notice within 60 days of receipt of the notice . . . .

Minn. Stat. § 80C.14, subd. 3(a).

[3]Because the district court subsequently dismissed Coyne's trademark and copyright infringement claims, Coyne's & Co., Inc. v. Enesco, LLC, 565 F. Supp. 2d 1027, 1043, 1044 (D. Minn. 2008), the appeal as to those claims is moot.

## II

Whether a preliminary injunction should issue turns upon: (1) the probability of the movant succeeding on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury in granting the injunction will inflict on the non-movant; and (4) the public interest. Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). We review the denial of a motion for preliminary injunction for abuse of discretion. Phelps-Roper v. Nixon, 509 F.3d 480, 484 (8th Cir. 2007), as modified on rehearing, 2008 WL 4755559. "An abuse of discretion occurs where the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." Lankford v. Sherman, 451 F.3d 496, 503-04 (8th Cir. 2006).

The district court's conclusion that the Agreement was not governed by the MFA because Coyne did not pay CA a franchise fee was not erroneous. The MFA defines a franchise as:

> (1) A right granted to the franchisee to engage in business using the franchiser's trade name or other commercial symbol, (2) a "community of interest" in the marketing of goods or services between the franchisee and franchiser, and (3) a "franchise fee" paid by the franchisee.

Martin Investors, Inc. v. Vander Bie, 269 N.W.2d 868, 874 (Minn. 1978); see also Minn. Stat. § 80C.01, subd. 4(a)(1).

The dispute centers around the third element—whether Coyne paid CA a franchise fee. The MFA defines a franchise fee as:

> [A]ny fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the

payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for goods or services, or any training fees or training school fees or charges; provided, however, that the following shall not be considered the payment of a franchise fee:

(a) the purchase of goods or agreement to purchase goods at a bona fide wholesale price; . . . .

Minn. Stat. § 80C.01, subd. 9.

Coyne admits it did not pay what would ordinarily be considered a "franchise fee," i.e., an up-front, direct fee for the right to distribute CA's products. Instead, Coyne argues it paid an indirect franchise fee in the form of a minimum purchase requirement and a 35-50% mark-up on the Products.

A.    Minimum Purchase Requirement

A minimum purchase requirement can be a franchise fee "if the distributors were required to purchase amounts or items that they would not purchase otherwise." Twin Cities Galleries, LLC v. Media Arts Group, Inc., 476 F.3d 598, 601 (8th Cir. 2007) (quoting Upper Midwest Sales Co. v. Ecolab, Inc., 577 N.W.2d 236, 242 (Minn. Ct. App. 1998)). To so determine, the Court applies an objective test, examining "whether the [minimum purchase] requirements were unreasonable." Id. (quoting Upper Midwest, 577 N.W.2d at 242).

Coyne does not assert, nor did it below, the minimum purchase requirement was unreasonable, so the district court did not clearly err in finding the minimum purchase requirement is not an indirect franchise fee under the MFA.

B.     Product Price Mark-Up

A price mark-up on goods above a bona fide wholesale price may constitute an indirect franchise fee. Cambee's Furniture, Inc. v. Doughboy Recreational, Inc., 825 F.2d 167, 171 (8th Cir. 1987) (interpreting South Dakota's franchise regulation, which is substantially similar to the MFA); Upper Midwest, 577 N.W.2d at 242; OT Indus., Inc. v. OT-tehdas Oy Santasalo-Sohlberg Ab, 346 N.W.2d 162, 166 (Minn. Ct. App. 1984). The question of whether the mark-up is a bona fide wholesale price or an indirect franchise fee is a fact-specific inquiry.

The district court found the CA Product mark-up is not an indirect franchise fee; rather, the mark-up merely represented CA's profits on the Products, i.e. a bona fide wholesale price. Coyne argues the court was incorrect because it is illogical to assume that all of the rights granted to Coyne under the Agreement—such as the license to use the Trademarks, the limitation on CA's right to compete with Coyne in the Territory, and CA's obligation to pay a substantial termination fee—are merely in consideration for Coyne's payment of a bona fide wholesale price for CA products.

This argument, however, falls short of demonstrating the district court's factual finding is clearly erroneous. See Commc'n Maint., Inc. v. Motorola, Inc., 761 F.2d 1202, 1206-07 (7th Cir. 1985) (holding that mark-up retained by alleged franchisor was not an indirect franchise fee under Indiana's franchise regulation); Corporate Res., Inc. v. Eagle Hardware & Garden, Inc., 62 P.3d 544, 548 (Wash. Ct. App. 2003) (holding that profit margins on installation contracts was not an indirect franchise fee under Washington's franchise regulation). Therefore, the Court will not disturb the district court's finding on appeal.

Accordingly, the district court did not clearly err in finding Coyne did not pay a franchise fee, and the Agreement thus did not fall within the protections of the MFA for purposes of a preliminary injunction.

## III

We affirm the district court.

_____