**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARTINUS SUTANDAR, | No. 06-72494 |
| Petitioner, | Agency No. A079-535-430 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 8, 2010
Pasadena, California

Before: PREGERSON, D.W. NELSON, and IKUTA, Circuit Judges.

Petitioner Martinus Sutandar (Sutandar), a native and citizen of Indonesia,

appeals the Board of Immigration Appeals' (BIA) decision denying him asylum

and withholding of removal. The BIA found that the past treatment Sutandar

suffered in Indonesia did not rise to the level of persecution and that his fear of

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

1

future persecution was not objectively reasonable. Because substantial evidence does not support the BIA's determination, we grant Sutandar's petition for review and remand to the BIA for further proceedings.

1. The BIA erred in finding that the mistreatment Sutandar suffered did not rise to the level of persecution. Neither the IJ nor the BIA made an adverse credibility finding. Accordingly, this court must take the testimony of Sutandar as true. *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004).

In his testimony, Sutandar described two incidents in which he was physically beaten on account of his Chinese ethnicity and Christian religion. The first incident occurred in 1995 while Sutandar was driving to church. Sutandar was stopped by a group of about eight to ten Muslim fundamentalists who broke the driver's side window of his car and demanded that he exit his vehicle, while calling him a "Chinese infidel." Threatened with a weapon, Sutandar unwillingly exited his car and was beaten. The attackers also threatened to kill him. Sutandar was surprised when police looked on and did not intervene, even though he screamed for help.

In 1999, Sutandar's fruit business in Jakarta was looted and the building burned down by Muslim fundamentalists. Sutandar was beaten severely with a piece of wood and he was kicked on the ground until he vomited blood. One of his

assailants yelled at him, "You Chinese pig[. You] don't deserve to live!" Sutandar

eventually fainted from the beating. According to Sutandar, he did not file a police

report because his previous experience indicated that going to the police would be

useless. Prior to this incident, Sutandar's store had been robbed multiple times by

armed Muslim youths. He reported these incidents to the police and they did

nothing.

The BIA's finding that these incidents did not rise to the level of persecution

was error. "Physical violence ordinarily meets the requirement of severity that

characterizes persecution as opposed to mere discrimination." *Hoxha v. Ashcroft*,

319 F.3d 1179, 1182 n.5 (9th Cir. 2003). While "the determination that actions

rise to the level of persecution is very fact-dependent . . . threats of violence and

death are enough." *Cordon-Garcia v. INS*, 204 F.3d 985, 991 (9th Cir. 2000).

Moreover, though single incidents of past mistreatment may not rise to the level of

persecution, the cumulative effect of those harms and abuses may support an

asylum claim. *See Ahmed v. Keisler*, 504 F.3d 1183, 1194 (9th Cir. 2007) ("Where

an asylum applicant suffers [physical harm] on more than one occasion, and . . . is

victimized at different times over a period of years, the cumulative effect of the

harms is severe enough that no reasonable fact-finder could conclude that it did not

rise to the level of persecution.").

Standing alone, the two incidents of physical violence perpetrated on Sutandar because of his ethnicity and religion each compel a finding of past persecution.[1] *Hoxha*, 319 F.3d at 1182 n.5 (quoting *Duarte de Guinac v. INS*, 179 F.3d 1156, 1160 n.5 (9th Cir. 1999), for the proposition that the court has "consistently found persecution where, as here, the petitioner was physically harmed."). When those physical attacks are combined with threats against Sutandar's life and evidence of persistent harassment, the record compels a finding that Sutandar suffered past persecution. *Ahmed*, 504 F.3d at 1194.

2. The BIA also erred by finding that Sutandar did not have a well-founded fear of future persecution. Because Sutandar suffered past persecution, he is entitled to a rebuttable presumption that his fear of future persecution is well-founded. 8 C.F.R. § 208.13(b)(1); *see also Lim v. INS*, 224 F.3d 929, 935 (9th Cir. 2000). Thus, the burden shifts to the government to demonstrate "by a preponderance of the evidence" that there has been a fundamental change in circumstances such that Sutandar no longer has a well-founded fear or that

---

[1] The government's reliance on our decision in *Halim v. Holder*, 590 F.3d 971, 975-76 (9th Cir. 2009), is unfounded. In *Halim*, we reviewed a claim of past persecution by a Chinese Indonesian and held that the record "simply [did] not compel a finding of past persecution." *Id.* at 976. But, unlike Sutandar, the petitioner in *Halim* described only one incident of physical violence against him; he was rescued by the government's army; and the IJ found him not credible. *Id.*

Sutandar could avoid future persecution by relocating to another part of Indonesia. 8 C.F.R. §§ 208.13(b)(1)(i)(A), (B).

The government was on notice that Sutandar was arguing before both the IJ and the BIA that "changed circumstances" in Indonesia since September 11, 2001, indicated that violence by Muslim fundamentalists against Christians had increased. Because the government "made no arguments concerning changed country conditions to the IJ or the BIA, and presented no documentary evidence for that purpose," we will not remand to give it another opportunity to do so.[2] *Ndom v. Ashcroft*, 384 F.3d 743, 756 (9th Cir. 2004), *superceded by statute on other grounds as recognized by Parussimova v. Mukasey*, 553 F.3d 1128, 1133 (9th Cir. 2008); *Baballah v. Ashcroft*, 367 F.3d 1067, 1078 n.11 (9th Cir. 2004) ("In these circumstances, to provide the INS with another opportunity to present evidence of changed country conditions, when it twice had the chance, but failed to do so, would be exceptionally unfair.").[3]

---

[2] Nor is there any evidence in the record that Sutandar could re-locate to another part of Indonesia to avoid future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i)(B).

[3] The dissent mistakenly relies on *INS v. Ventura*, 537 U.S. 12, 16 (2002), for the proposition that we must remand to the BIA to consider changed country conditions. Dissent at 1. In *Ventura*, the government argued to the IJ, the BIA, and our court that changed country conditions precluded asylum. *Ventura*, 537 U.S. at 13-14. Here, however, it was Sutandar who raised the issue of changed

(continued...)

5

Moreover, Sutandar demonstrated that he has a well-founded fear of persecution not only because of past persecution, but also because he is a member of a "disfavored group" and he is likely to be targeted as a member of that group. We have previously recognized that Chinese Indonesians, *Sael v. Ashcroft*, 386 F.3d 922, 927 (9th Cir. 2004)*,* and Christian Indonesians, *Tampubolon v. Holder*, 610 F.3d 1056, 1062 (9th Cir. 2002), are "disfavored groups." We have also suggested that Chinese Christians are a disfavored group in Indonesia. *See Wakkary v. Holder*, 558 F.3d. 1049, 1063 (9th Cir. 2009). The BIA implicitly applied a "disfavored group" analysis to Sutandar's claims and recognized that Sutandar need only demonstrate a comparatively low level of individualized risk. *See Sael*, 386 F.3d at 927; *Kotasz v. INS*, 31 F.3d 847, 853 (9th Cir. 1994). But the BIA concluded that Sutandar "did not present specific and direct evidence that he . . . was the victim of repeated threats, acts of violence and vandalism, or other criminal activity by native Indonesians." This conclusion is directly contradicted by Sutandar's credible testimony. *See Kalubi*, 364 F.3d at 1137.

Moreover, the BIA's attempts to distinguish our precedents in *Sael*, 386 F.3d at 927, and *Lolong v. Gonzales*, 400 F.3d 1215, 1223 (9th Cir. 2005), *rev'd en*

---

[3](...continued)
country conditions before the IJ, before the BIA, and before our court, and the government never bothered to offer any evidence to the contrary, despite its burden to do so.

*banc*, 484 F.3d 1173, 1179 (9th Cir. 2007), are unavailing. In *Sael*, we held that past threats and violence were enough to establish a sufficient individualized risk, even if they did not rise to the level of persecution. 386 F.3d at 927. The petitioner in *Sael* produced evidence that she was threatened, that her car was vandalized and destroyed, that stones were thrown at her residence, and that rioters attempted to open the taxi cab in which she and her husband were passengers. *Id.* We held that the petitioner in *Sael* had met her burden of demonstrating a comparatively low level of individualized risk to prove her well-founded fear of future persecution. *Id.* The incidents Sutandar describes are even more egregious than those described in *Sael*. Sutandar testified credibly to multiple incidents of threats, harassment, and physical violence, including being beaten to unconsciousness. And unlike the petitioner in *Lolong*—who did not experience past persecution and instead presented only evidence that her friends and family members had suffered mistreatment[4]—Sutandar provided credible evidence of his

---

[4] The claim that Sutandar's mother, who is also Chinese and Christian, has not suffered mistreatment in Indonesia does not undercut his fear of future persecution. Where an asylum applicant was singled out for targeted persecution in the past, the situation of similarly-situated relatives who remain in the country unharmed is "manifestly irrelevant." *Jahed v. INS*, 356 F.3d 991, 1001 (9th Cir. 2004); *see also Zhao v. Mukasy*, 540 F.3d 1027, 1031 (9th Cir. 2008). Furthermore, Sutandar's previous victimization makes his mother *not* similarly-situated. *Hoxha*, 319 F.3d at 1184. Finally, Sutandar credibly testified that all his family members were victims of unfair treatment, persecution, and discrimination,

(continued...)

7

own past mistreatment sufficient to show the relatively low level of individualized

risk of future persecution required by *Sael*.[5] Moreover, substantial evidence in the

record suggests that the Indonesian government has been either unwilling or unable

to prevent attacks on Christians perpetuated by Muslims.[6] Accordingly, in addition

to his past persecution, Sutandar has demonstrated an objectively reasonable, well-

founded fear of future persecution. Thus, Sutandar is statutorily eligible for

asylum. *See Ratnam v. INS*, 154 F.3d 990, 994 (9th Cir. 1998). Because the

granting of asylum is discretionary, however, we remand to the BIA for it to

exercise its discretion. *See Navas v. INS*, 217 F.3d 646, 655 (9th Cir. 2000); *INS v.*

*Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987).

     3.     The BIA found that since Sutandar had not met the burden of proof

applicable to asylum, he could not meet the higher burden of proof applicable to a

---

[4](...continued)
and Sutandar was never asked whether his mother suffered mistreatment.

[5] Nor is Sutandar's claim an "undifferentiated claim" of the type we have previously held insufficient for asylum, *Lolong v. Gonzales*, 484 F.3d at 1179-80, because Sutandar suffered past persecution.

[6] For example, Sutandar submitted the United States Department of State's 2002 International Religious Freedom Report on Indonesia, which states that "There is widespread tension between Muslims and Christians that has erupted into localized violent conflicts in recent years. . . . The lack of an effective government response to punish perpetrators and prevent further attacks continued to lead to allegations that officials were complicit in some of the incidents or, at a minimum, allowed them to occur with impunity."

withholding of removal claim.[7] But the rebuttable presumption that Sutandar

would suffer future persecution if he were returned to Indonesia is equally

applicable to his claim for withholding of removal. 8 C.F.R. § 1208.16(b)(1); *see*

*Mutuku v. Holder*, 600 F.3d 1210, 1213 (9th Cir. 2010); *Mousa v. Mukasey*, 530

F.3d 1025, 1030 (9th Cir. 2008). Because the government failed to present any

evidence of changed country conditions or ability to re-locate, a clear probability

of future persecution is established and Sutandar is entitled to withholding of

removal. 8 C.F.R. § 208.16(b)(1)(i); *see also* 8 C.F.R. § 208.16(b)(2)(ii);

*Baballah*, 367 F.3d at 1079.[8]

* * *

Sutandar is statutorily eligible for asylum and entitled to withholding of

removal. For the foregoing reasons, we GRANT the petition for review and

---

[7] The government argues that Sutandar waived his withholding of removal claim. However, Sutandar raised his withholding claims in his arguments that he was entitled to a rebuttable presumption of a well-founded fear of future persecution based on his past persecution, thereby putting the government on notice of those claims. *See Mamouzian v. Ashcroft*, 390 F.3d 1129, 1136 (9th Cir. 2004). Although the argument is "inartful," it is sufficient. *See Ndom*, 384 F.3d at 750-51.

[8] Sutandar failed to raise his Convention Against Torture claim on appeal before the BIA. Nor does he raise such a claim before us. Any claims for protection under the Convention Against Torture are, therefore, waived. *See Zetino v. Holder*, 622 F.3d 1007, 1011 n.1 (9th Cir. 2010).

REMAND to the BIA for it to exercise its discretion over Sutandar's asylum application and for an appropriate order withholding Sutandar's removal.

**PETITION GRANTED and REMANDED.**

*Sutandar v. Holder*, 06-72494
IKUTA, Circuit Judge, dissenting in part:

Not long ago, the Supreme Court summarily reversed one of our immigration decisions and reminded us of a basic principle of administrative law: when the BIA has not considered an issue, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)) (internal quotation marks omitted). Just a few years later, the Court summarily reversed us *again*, pointing out that our failure to remand a similar immigration issue to the BIA is an "error [that] is obvious in light of *Ventura*." *Gonzales v. Thomas*, 547 U.S. 183, 185 (2006) (per curiam) (quotation marks omitted). Reading these cases together, the Supreme Court's message to the Ninth Circuit is clear: "What about the ordinary remand rule don't you understand?"

But here we go again. The facts and procedural posture of this case are effectively identical to *Ventura*.[1] Here, as in *Ventura*, the IJ and BIA determined that the petitioner had not demonstrated past persecution. As a result, the BIA

---

[1] Because *Ventura*'s application of "well-established principles of administrative law," 537 U.S. at 16, is directly on point here, the majority is left with the thankless task of trying to distinguish *Ventura* on a factual ground that played no role in the Supreme Court's analysis. *See* maj. op. at 5 n.3.

never considered whether the government could show "a fundamental change in circumstances" in Indonesia such that petitioner no longer has a well-founded fear of persecution, 8 C.F.R. § 208.13(b)(1)(i)(A), or that the petitioner "could avoid future persecution by relocating" within the country, *id.* § 208.13(b)(1)(i)(B). Therefore, just as in *Ventura*, we must remand in order for the BIA to determine the "changed circumstances" question in the first instance. 537 U.S. at 16–18. We must also give the BIA a chance to determine the relocation question.

Instead, turning its back on clear Supreme Court direction, the majority makes its own determination that nothing in the record amounts to changed country circumstances. Not only does the majority usurp the agency's decisionmaking authority, but also deprives the agency of its authority to take in new evidence. *See id.* at 18 (holding that remand is appropriate because it "could lead to the presentation of further evidence of current circumstances" in the country at issue). The majority's approach cannot be squared with *Ventura*.

The reasons for remanding to the BIA are the same here as they were in *Ventura*. As the Supreme Court explained, "[t]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law

2

provides." *Id.* at 17. There is evidence in the record here on country conditions that should be evaluated by the BIA, including U.S. State Department country reports spanning several years, from 2000 to 2004, as well as evidence that the petitioner's mother was living and working in Indonesia at the time of the immigration proceedings, suggesting a significant change from the living and working conditions described by the petitioner. Moreover, given that nine to eleven years have passed since the U.S. Department of State country reports and other evidence, submitted to the IJ and BIA, were written, it would be entirely appropriate for the government to submit new evidence. *See id.* at 18.

The majority seems to think there is a legal principle eliminating the ordinary remand rule once the government has had "one bite at the apple." We have already explained there is no such rule. *See Lopez v. Ashcroft*, 366 F.3d 799, 806 (9th Cir. 2004). Nor can the majority claim it is bound by *Baballah v. Ashcroft*, 367 F.3d 1067 (9th Cir. 2004); unlike that case, the government here has not represented that "all relevant issues of fact and law were fully presented to the immigration court during the course of the hearing." *Id.* at 1078 n.11. Rather, this case is squarely governed by *Ventura*'s holding that appellate courts must not "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." 537 U.S. at 16 (internal quotation marks and citation

3

omitted).

Because I would follow the clear direction of the Supreme Court, I respectfully dissent.