# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2982

_____

Novus Franchising, Inc.

*Plaintiff - Appellant*

v.

Michael L. Dawson; CarMike, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 13, 2013
Filed: August 5, 2013

_____

Before LOKEN, BRIGHT, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

This is a dispute over an automotive glass repair franchise located in Richmond, Virginia. Novus Franchising, Inc. (Novus) appeals the district court's[1]

_____

[1] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

refusal to enforce a non-compete clause against franchisee Michael L. Dawson as part of a preliminary injunction which prohibits Dawson from using Novus's marks and products in his automotive glass repair business. The district court dismissed Dawson's corporation, CarMike, Inc., from the suit after concluding Novus failed to allege sufficient facts for a Minnesota court to exercise personal jurisdiction over the Virginia corporation; the district court also gave Dawson an extension of time in which to file an answer. In addition to challenging the scope of the injunctive relief granted by the district court, Novus appeals these two other aspects of the district court's order. We dismiss these two additional issues for lack of appellate jurisdiction, and affirm the district court's preliminary injunction.

I

Novus operates automotive glass repair franchises worldwide with a principal place of business in Minnesota. Dawson began a twenty-year relationship with Novus as one of its franchisees in 1990, when he and his father purchased a Novus franchise in Charlottesville, Virginia. Five years later, Dawson purchased his own Novus franchise covering the Virginia counties of Hanover and Henrico, including the metropolitan area of Richmond, Virginia. Dawson and Novus later entered into a ten-year franchise agreement covering the same Area of Primary Responsibility (APR) in 1998. Another ten years later in 2008, Dawson and Novus agreed to renew their franchise relationship. The 2008 franchise agreement the parties signed is the subject of this lawsuit.

The 2008 franchise agreement contained the following non-compete clause:

You agree that you, your Owners, the Personal Guarantors, and the members of your and their immediate families will not, for a period of two years after the termination or expiration of this Agreement, for your or their own account or as an employee, agent, consultant, partner, officer, director, member, or owner of any other person, firm, entity,

-2-

partnership, company or corporation (a) seek to employ any person who is at that time employed by us or by any Novus franchisee without the prior consent of their employer, (b) own, operate, lease, franchise, license, conduct, engage in, consult with, be connected with, have any interest in, or assist any person or entity engaged in any other business that is in any way competitive with or similar to the Business System or the Business (including any glass repair and/or glass replacement or installation business) if that business is located within (i) your APR, (ii) or any area of primary responsibility we grant to any other Novus franchise or business, or (iii) within ten miles of any business location of any Novus franchise or business in the United States and its possessions.

Appendix at 71.

Dawson also agreed "that the time and geographical limitations set forth in [the non-compete] provision are reasonable and necessary to protect [Novus] and our franchises if this Agreement expires or is terminated by either party for any reason, and that this covenant not to compete is necessary to permit [Novus] the opportunity to resell and/or develop a new Novus business within [Dawson's] APR." Id. In addition, Dawson agreed he would have no right to use the names and marks of the Novus business system upon the termination or expiration of the franchise agreement. Finally, Dawson agreed all legal actions between the parties would be venued in Hennepin County, Minnesota.

Dawson stopped paying the royalties due under the 2008 franchise agreement in October 2010. He alleges he was unable to pay the royalty fees because Novus granted a franchise in his territory to another person, Barry Robinson, and the "resulting inter-franchise competition between Dawson and Robinson in what Dawson had been led to believe was his territory virtually destroyed Dawson's business, rendering it impossible for him to pay the minimum franchise fees." Answer at ¶ 36. On February 11, 2011, four months after Dawson stopped paying

royalties, Novus sent him a Notice of Default letter, informing him that his failure to submit gross revenue reports and royalties was a material breach of the 2008 franchise agreement. Novus told Dawson he had to cure the defaults or his franchise agreement would be terminated. Dawson did not cure the defaults. On October 21, 2011, a full year after Dawson stopped paying royalties, Novus notified him it was terminating the 2008 franchise agreement. The Notice of Termination reminded Dawson of his post-termination obligations under the non-compete clause of the agreement, as well as Dawson's loss of the right to use Novus's names or marks or business system.

Despite not paying royalty fees to Novus, Dawson continued operating an automotive glass repair business which advertised itself as "Novus Glass by CarMike, Inc." On February 29, 2012, Novus filed suit against Dawson and CarMike in federal district court in the District of Minnesota. The suit asserted claims for breach of the franchise agreement, conversion of Novus's equipment, trademark infringement, violation of the Minnesota Deceptive Trade Practices Act, unjust enrichment, unfair competition, and a demand for an accounting. With respect to CarMike, Novus alleged Dawson was "a corporate officer of CarMike" and that Dawson "entered into the Franchise Agreement with a Minnesota-based corporation, carried on an extensive business relationship with a Minnesota corporation, and his breaches of contract have given rise to injuries in the State of Minnesota." Complaint at ¶ 12. Dawson did not respond to the suit by filing an answer or moving to dismiss the complaint.

On March 26, 2012 – over seventeen months after Dawson stopped making royalty payments – Novus filed a motion for a preliminary injunction seeking enforcement of the non-compete provisions of the franchise agreement and seeking to prohibit Dawson from using Novus's marks and products in his ongoing automotive glass repair business. Novus also requested a default judgment because Dawson had not responded to the complaint. The district court set a hearing for the two motions on May 8, 2012. Four days before the hearing, however, Dawson

emailed the district court asking for an extension of the hearing date. The district court granted the request and reset the hearing for July 9, 2012. By the time of the July 9 hearing date, Dawson still had not filed an answer or moved to dismiss the complaint.

Dawson appeared at the July 9 hearing by phone, representing himself *pro se*. He explained he could not afford to hire an attorney because he was "barely putting food on the table and barely making our mortgage." He said he had three children to support and "could be facing bankruptcy" as a result of the dispute with Novus. The district court questioned whether Dawson's corporation, CarMike, was subject to jurisdiction in Minnesota. The district court also asked Dawson whether he intended to file an answer to the complaint, and Dawson said he "would like to try to find a lawyer."

On July 15, 2012, the district court entered an order granting Novus's motions in part and denying them in part. The district court dismissed CarMike from the suit for lack of personal jurisdiction after concluding Novus did not allege the corporation had any relationship to Dawson's franchise with Novus. The district court stated "Novus has not alleged any independent contacts that CarMike, Inc. has had with Minnesota, relying instead on Dawson's actions to establish jurisdiction over CarMike, Inc. However, Novus has not shown that Dawson was acting as CarMike, Inc.'s agent when he entered into a franchise agreement with Novus." Addendum at 3.

The district court granted Novus's request for a preliminary injunction to prohibit Dawson from using Novus's marks and products. The district court did not, however, grant Novus's request to enforce the 2008 franchise agreement's non-compete clause as part of the preliminary injunction. The district court determined "Novus has not shown that it will suffer irreparable harm if Dawson continues to operate his business without using Novus products or services, nor has Novus shown

that the balance of the harms or the public interest weighs against allowing Dawson to continue to operate his business without Novus marks or products." Id. at 5.

The district court also gave Dawson sixty days to file an answer to the complaint. Dawson later retained an attorney and filed an answer. He also filed a counterclaim alleging that Novus engaged in common law fraud by inducing him to sign the 2008 franchise agreement without disclosing to him that his territory had been split and a new franchise had been offered to Robinson which included all of his APR. Dawson also alleged Novus violated the Minnesota Franchise Act during the negotiations for the 2008 franchise agreement.

Novus timely filed an interlocutory appeal of the district court's order. See 28 U.S.C. § 1292(a)(1) (granting the courts of appeals jurisdiction over interlocutory orders of the district courts "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions"). On appeal, Novus contends the district court erred in refusing to enforce the non-compete provisions as part of the preliminary injunction issued against Dawson, erred in dismissing CarMike for lack of personal jurisdiction, and erred in granting Dawson an additional sixty days in which to file an answer.

II

Before considering the propriety of the district court's injunctive relief, we need to address whether we have jurisdiction over Novus's appeal of the dismissal of CarMike for lack of personal jurisdiction and the order granting Dawson an extension of time to file an answer. See Waterson v. Hall, 515 F.3d 852, 855 n.3 (8th Cir. 2008) (noting our obligation to raise an issue of appellate jurisdiction *sua sponte* even though not challenged by an appellee).

We first address the district court's dismissal of CarMike for lack of personal jurisdiction. The district court included the dismissal of CarMike in its order addressing Novus's request for injunctive relief, and the dismissal had the practical effect of denying Novus a preliminary injunction against CarMike. The district court did not, however, enter a certification under Rule 54(b) of the Federal Rules of Civil Procedure with respect to CarMike's dismissal. Absent a Rule 54(b) certification, "[a]n order dismissing one party for lack of personal jurisdiction while allowing suit to continue against the remaining defendants is not a final, appealable order[.]" Special Invs., Inc. v. Aero Air, Inc., 360 F.3d 989, 993 (9th Cir. 2004); see also Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 460 F.3d 470, 476 (3d Cir. 2006) ("[A]n order . . . in which the district court dismissed one defendant for want of personal jurisdiction but other defendants remained, could not in itself be a final order for purposes of appeal when the court entered it.").

In its jurisdictional statement, Novus cites Quinn v. Missouri, 839 F.2d 425, 426 (8th Cir. 1988), and claims the entire order granting injunctive relief (which included CarMike's dismissal and the extension of time to file an answer) is reviewable on appeal. Quinn merely quoted from an earlier Eighth Circuit case which said "an appeal from an order granting or refusing injunctive relief pursuant to 28 U.S.C. § 1292(a)(1) presents for appellate review the entire order, not merely the propriety of injunctive relief." McNally v. Pulitzer Publ'g Co., 532 F.2d 69, 73–74 (8th Cir. 1976). We believe this broad statement, made over thirty-five years ago in McNally, has been narrowed by a subsequent Supreme Court decision and thus does not bind us. See United States v. Williams, 537 F.3d 969, 975 (8th Cir. 2008) (indicating the general rule prohibiting one panel from overruling another panel does not apply when an intervening Supreme Court decision is handed down).

In Carson v. American Brands, Inc., 450 U.S. 79 (1981), the Supreme Court recognized a distinction between orders that specifically deny injunctive relief and those orders that merely have the practical effect of doing so. Id. at 83-84. For "[a]n

order that merely has the practical effect of denying an injunction [to be] immediately appealable," Carson requires a litigant to show "the order might have some 'serious, perhaps, irreparable, consequence' and that the order can be 'effectually challenged' only by immediate appeal." Kausler v. Campey, 989 F.2d 296, 299 (8th Cir. 1993) (quoting Carson, 450 U.S. at 84). "If the affected party cannot establish that both of the Carson requirements have been satisfied, 'the general congressional policy against piecemeal review will preclude interlocutory appeal.'" Id. (quoting Carson, 450 U.S. at 84).

The order dismissing CarMike for want of personal jurisdiction is subject to the Carson test because it did not specifically deny an injunction against CarMike, but had the practical effect of doing so. Indeed, Carson itself discussed an earlier Supreme Court case with circumstances closely analogous to those involved here. In General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430 (1932), a defendant in a patent infringement suit brought a counterclaim for patent infringement against the plaintiffs and sought injunctive relief. The district court dismissed the counterclaim for lack of personal jurisdiction, which had the practical effect of denying the defendant's request for injunctive relief. When the defendant appealed to the Sixth Circuit, the plaintiffs claimed the dismissal of the counterclaim for lack of personal jurisdiction did not constitute a denial of injunctive relief immediately appealable under the terms of the substantially identical predecessor of 28 U.S.C. § 1292(a)(1). The Sixth Circuit disagreed, exercised appellate jurisdiction, and reversed the district court. See id. at 431. After granting a writ of certiorari, the Supreme Court affirmed the Sixth Circuit's exercise of appellate jurisdiction over the order dismissing the counterclaim for lack of personal jurisdiction, stating

> by their motion to dismiss, plaintiffs themselves brought on for hearing the very question that, among others, would have been presented to the court upon formal application for an interlocutory injunction. . . . It cannot be said, indeed plaintiffs do not claim, that the dismissal did not

deny to defendants the protection of the injunction prayed in their answer.

Id. at 433.

Importantly for our purposes, Carson described General Electric as involving an order of dismissal which was subject to, and satisfied, the dual inquiry of (1) having a serious, perhaps irreparable consequence (2) that could not be effectually challenged unless an appeal was immediately taken. See Carson, 450 U.S. at 86 n.11. This case, like General Electric, involves an order of dismissal against a party for lack of personal jurisdiction which had the effect of denying the other party the protection of an injunction against the dismissed party. As a result, we are confident the district court order dismissing CarMike for lack of personal jurisdiction is likewise subject to Carson's requirements before we can exercise appellate jurisdiction over it.[2]

The order dismissing CarMike for lack of personal jurisdiction does not satisfy Carson's requirements because the dismissal order will not result in irreparable consequences if it is not immediately appealed. To begin with, CarMike's dismissal from this case does not prevent Novus from seeking injunctive relief against CarMike in a court where personal jurisdiction over the corporation should not be disputed, such as a state or federal court in Virginia. In addition, as Novus itself argues, the injunction against Dawson applies to those "in active concert or participation" with

---

[2]The procedural posture of this case – where a plaintiff challenges the dismissal of one defendant for lack of personal jurisdiction as part of an appeal from an order refusing injunctive relief against a separate defendant – is distinct from the situation where a defendant against whom an injunction is entered immediately appeals the order granting the injunction and also claims the district court erred in exercising personal jurisdiction over him or her. In such a situation, the appellate court must necessarily address the personal jurisdiction issue to determine whether the district court had authority to enter the injunction. See Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983).

Dawson, Fed. R. Civ. P. Rule 65(d)(2)(C), which certainly would include CarMike if Dawson caused CarMike to use Novus's marks and products in violation of the injunction. Because Novus can, if necessary, pursue alternate avenues to effectively enjoin CarMike, CarMike's dismissal from this suit does not result in irreparable consequences such that an immediate appeal is required to effectually challenge the district court's decision.

The order dismissing CarMike would also be reviewable if it were "inextricably intertwined" with the district court's partial grant and partial denial of Novus's claim for injunctive relief. See Manion v. Nagin, 255 F.3d 535, 540 (8th Cir. 2001) (recognizing appellate jurisdiction exists under 28 U.S.C. § 1292(a)(1) for issues inextricably intertwined with the denial of a preliminary injunction); Newton Cnty. Wildlife Ass'n v. United States Forest Serv., 113 F.3d. 110, 116 (8th Cir. 1997) (same). "[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal[.]" Kincade v. City of Blue Springs, 64 F.3d 389, 394 (8th Cir. 1995) (quoting Moore v. City of Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995)).

The issue whether Minnesota courts have personal jurisdiction over CarMike is an analytically separate inquiry from whether Novus is entitled to injunctive relief against Dawson or CarMike. The resolution of Novus's appeal of the preliminary injunction does not "necessarily resolve" the question whether the district court erred in dismissing CarMike for lack of personal jurisdiction. See id. (indicating a pendent claim is not subsumed in the claim before the court on interlocutory appeal unless "appellate resolution of the collateral appeal necessarily resolves the pendent claim as well") (quoting Moore, 57 F.3d at 930). The "inextricably intertwined" principle does not create appellate jurisdiction over CarMike's dismissal either. We therefore lack appellate jurisdiction over Novus's claim that the district court erred in dismissing CarMike for lack of personal jurisdiction, and dismiss that part of the appeal.

-10-

We next address whether appellate jurisdiction exists over Novus's appeal of the district court order granting Dawson an additional sixty days to file an answer. This is an interlocutory decision that clearly does not fall within the contours of 28 U.S.C. § 1292(a)(1), and thus there is appellate jurisdiction over this claim only if it is inextricably intertwined with the properly reviewable claim involving the preliminary injunction. See Manion, 255 F.3d at 540. Novus's appeal of this aspect of the district court's order suffers the same fate as the appeal of the order dismissing CarMike for lack of personal jurisdiction. The resolution of the question whether the district court abused its discretion in refusing to enforce the non-compete clause as part of its injunctive relief does not necessarily resolve the question whether the district court abused its discretion when it gave Dawson an extension of time in which to answer the complaint. We therefore dismiss this part of the appeal for lack of appellate jurisdiction as well.

III

Finally, we address the district court's refusal to enforce the 2008 franchise agreement's non-compete clause as part of the preliminary injunction. "We review the denial of a motion for preliminary injunction for abuse of discretion." Coyne's & Co., Inc. v. Enesco, L.L.C., 553 F.3d 1128, 1131 (8th Cir. 2009). "A district court has broad discretion when ruling on a request for preliminary injunction, and it will be reversed only for clearly erroneous factual determinations, an error of law, or an abuse of its discretion." Aaron v. Target Corp., 357 F.3d 768, 773-74 (8th Cir. 2004). An abuse of discretion occurs when "a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984).

Requests for preliminary injunction are analyzed under the four factors set forth in Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109 (8th Cir. 1981). The Dataphase factors are "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. at 114. In refusing to enforce the 2008 franchise agreement's non-compete clause, the district court focused on the irreparable harm factor. Because a "failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction," Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003), we likewise focus on this factor to determine whether the district court abused its discretion in this instance.

Novus claims the district court abused its discretion when it determined Novus would not suffer irreparable harm because Minnesota courts infer irreparable harm from the breach of a valid and enforceable non-compete clause. See Edin v. Jostens, Inc., 343 N.W.2d 691, 694 (Minn. Ct. App. 1984) ("In a proper case irreparable harm to the employer may be inferred if it can be shown that the employee breached an enforceable restrictive covenant."). Dawson counters that Novus is not entitled to an inference of irreparable harm in this case for two reasons.

First, Dawson argues a recent Supreme Court decision undermines Minnesota's rule of inferring irreparable harm. In eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), the Supreme Court rejected a "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances." Id. at 391. The Court explained that it "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." Id. at 392-93. Dawson argues eBay's holding requires courts to view as suspect any general rule creating a presumption or an inference in favor of automatically imposing an injunction. Indeed, the Eleventh Circuit has suggested "a strong case can be made that eBay's

-12-

holding necessarily extends to the grant of preliminary injunctions" in contexts other than patent infringement cases.  North Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1228 (11th Cir. 2008) (considering, but ultimately not deciding, whether eBay's prohibition against presumptions would apply to a preliminary injunction under the Lanham Act); see also Salinger v. Colting, 607 F.3d 68, 77-78 (2d Cir. 2010) (applying eBay's holding to preliminary injunctions issued for alleged copyright infringement); Seed Servs., Inc. v. Winsor Grain, Inc., 868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012) (refusing to "assume the existence of irreparable injury" in a trademark infringement case based on eBay).

Second, Dawson argues the long delay between the time he stopped paying royalties and the time Novus finally sought injunctive relief – a period of seventeen months – rebuts any inference of irreparable harm Novus may have had under the particular facts of this case.  For this proposition, Dawson relies primarily upon our decision in Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598 (8th Cir. 1999).  There we affirmed a district court's denial of a request for a preliminary injunction, focusing in large part on the plaintiff's delay of nine years in asserting that another company was using its registered product without permission.  Id. at 603.  We also cited with approval the Second Circuit's decision in Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964 (2d Cir. 1995), where the court said delay alone may justify the denial of a preliminary injunction when the delay is inexplainable in light of a plaintiff's knowledge of the conduct of the defendant.  Id. at 968 (citing Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) (concluding a delay of nine months after receiving notice of a defendant's conduct alleged to be causing irreparable harm justified denial of a preliminary injunction)); see also CHS, Inc. v. PetroNet, L.L.C., Civ. No. 10-94 RHK/FLN, 2010 WL 4721073 at *3 (D. Minn. Nov. 15, 2010) ("It has long been recognized that delay in seeking relief 'vitiates much of the force of . . . allegations of irreparable harm.'" (quoting Beame v. Friends of the Earth, 434 U.S. 1310, 1313 (1977))).

In addition to these two arguments countering Novus's claim that it is entitled to a presumption of irreparable harm under Minnesota law, Dawson also contends the particular harm Novus alleges – damage to the integrity of its franchise system – is not irreparable because it is too speculative. See Anytime Fitness, Inc. v. Family Fitness of Royal, L.L.C., No. 09-3503, 2010 WL 145259 at * 2 (D. Minn. Jan. 8, 2010) (concluding a concern about franchise integrity "is speculative" and "success on the merits . . . would dissuade . . . franchisees from ignoring their agreements"); Novus Franchising, Inc. v. Dean, No. 10-2834, 2011 WL 1261626 at * 3 (D. Minn. Mar. 30, 2011) ("Novus objects that the potential damage to the integrity of its franchising system constitutes irreparable harm. It argues that failure to enjoin the Deans will cause franchisees around the country to violate their non-compete agreements. However, this potential is similarly speculative. The Magistrate Judge appropriately noted that success on the merits of the claim is the proper deterrent for this potential harm, not injunctive relief.").

After considering all of the arguments made by both parties for and against the need for a preliminary injunction to enforce the non-compete clause, we conclude the district court did not abuse its discretion when it determined Novus failed to show irreparable harm under the particular facts involved in this case. "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 1996). At a minimum, Novus's failure to seek injunctive relief for a period of seventeen months after Dawson quit paying royalties "vitiates much of the force of [Novus's] allegations of irreparable harm." Beame, 434 U.S. at 1313. Furthermore, we question whether Novus's alleged injuries, i.e., "a loss of customers or customer goodwill," Appellant's Br. at 36, are truly "irreparable" in the sense that they could not be addressed through money damages if Novus is successful following a trial on the merits. Cf. Gen. Motors Corp. v. Harry Brown's, L.L.C., 563 F.3d 312, 319 (8th Cir. 2009) (affirming a district court's denial of a preliminary injunction where the district court "did not

-14-

clearly err" by finding harm from "lost customer relationships was equivalent to a claim of lost profits" and "could therefore be compensated" as money damages).[3]

Ultimately, our decision to affirm is driven by the relevant standard of review. We have not identified any relevant factors the district court should have considered but did not, nor any improper factors that should not have been considered but were, nor any clear error of judgment on the part of the district court. The abuse-of-discretion standard means "the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Kern, 738 F.2d at 970; see also Aaron v. Target Corp., 357 F.3d at 774 (referring to this "range-of-choice" principle when reviewing a preliminary injunction order). "That the denial of [a motion for a preliminary injunction] would not have been reversible as an abuse of discretion, however, does not mean that granting it was such an abuse. The very concept of discretion presupposes a zone of choice within which the trial courts may go either way." Kern, 738 F.2d at 971. Here, the fact that the district court chose not to enforce the non-compete clause as part of a preliminary injunction does not fall outside the range of the district court's permissible choices.

IV

We lack appellate jurisdiction over the appeal of the order dismissing CarMike, and therefore dismiss that part of the appeal. We likewise dismiss the appeal of the order granting Dawson an extension of time to file an answer for the same reason. We affirm the district court's preliminary injunction order.

_____

[3]Having decided the delay involved in this particular case rebuts any inference of irreparable harm to which Novus may have been entitled under Minnesota law, we do not address Dawson's claim that Minnesota law conflicts with the Supreme Court's decision in eBay.